## HYDE AND GLEISES, AND H. LOCKET, PLAINTIFFS IN ERROR, *v.* BOORAEM AND COMPANY, DEFENDANTS IN ERROR.

Louisiana. The defendants in error, merchants in New York, agreed with the plaintiffs in error, H. and G., merchants in New Orleans, that endorsed notes should be given by H. and G., for a certain sum, being the amount due by H. and G. to B. and Co., and other notes or drafts of H. and G., payable in New York, which endorsed notes were to be deposited in the hands of L., to be delivered to B. and Co., on their performing their agreement with H. and G.; part of which was to take up certain drafts and notes given by H. and G., and payable in New York. The notes, endorsed according to the agreement, were drawn and delivered to L. B. and Co. performed all their contract, excepting the payment of a draft for two thousand dollars, and a note for one thousand five hundred and sixty-eight dollars and seventy-four cents, which, from inability, they did not pay; and the same were returned to New Orleans, and were there paid, with damages and interest, by H. and G., at great loss and inconvenience. The notes deposited with L. amounted to upward of seven thousand dollars beyond the draft for two thousand dollars, and the notes for one thousand five hundred and sixty-eight dollars and seventy-four cents. B. and Co. filed a petition according to the Louisiana practice, praying for a decree by which the endorsed notes in the hands of L. should be delivered to them, equal to the balance due to them. The district judge gave a decree in favour of B. and Co., in conformity with the petition. Held, that the decree was erroneous: and the Court reversed the same, and ordered the case to be remanded, and the petition to be dismissed with costs, by the Circuit Court of Louisiana.

The Supreme Court has no authority, as an appellant Court, upon a writ of error, to revise the evidence in the Court below, in order to ascertain whether the judge rightly interpreted the evidence, or drew right conclusions from it. That is the proper province of the jury; or of the judge himself, if the trial by jury is waived, and it is submitted to his personal decision. The Court can only re-examine the law, so far as he has pronounced it, upon a state of facts; and not merely upon the evidence of facts found in the record in the making of a special verdict, or an agreed case. If either party in the Court below is dissatisfied with the ruling of the judge in a matter of law, that ruling should be brought before the Supreme Court, by an appropriate exception, in the nature of a bill of exceptions; and should not be mixed up with the supposed conclusions in matters of fact.

The contract between B. and Co. and H. and G. was, what the French law, the basis of that of Louisiana, calls a commutative contract, involving mutual and reciprocal obligations; where the acts to be done on one side form the consideration for those to be done on the other.

Upon principles of general justice, if the acts are to be done at the same time, neither party to such a contract could claim a fulfilment thereof; unless he had first performed, or was ready to perform, all the acts required on his own part.

When the entire fulfilment of the contract is contemplated as the basis of the arrangement, the contract, under the laws of Louisiana, is treated as indivisible; and

. [Hyde and Gleises *v.* Booraem and Company.]

neither party can compel the other to a specific performance, unless he complies with it in toto.

IN error to the District Court of the United States for East Louisiana.

Booraem and Company, merchants of New York, agreed with Hyde and Gleises, merchants of New Orleans, who were indebted to them, to give them an extension of time for the payment of the amount due by them, if they would give their notes, payable at subsequent periods, for a certain sum, the notes to be endorsed, and deposited with H. Locket, and to be delivered to them on their having paid certain engagements, due in New York; and the amount of which was included in the amount of the notes deposited in the hands of H. Locket. The notes were given and deposited in pursuance of this agreement; and Booraem and Company performed all the matters contained in the agreement, excepting that they did not pay a draft for two thousand dollars, and a note for one thousand seven hundred and sixty-eight dollars and seventy-four cents, due and payable in New York; being unable to pay the same. The draft and note were returned to New Orleans, and Hyde and Gleises, at great inconvenience and loss, paid for the same.

Booraem and Company, proceeding according to the practice in Louisiana, filed a petition in the District Court, then exercising the powers of a Circuit Court of the United States, asking that the notes of Hyde and Gleises, in the hands of H. Locket, taking from the same a sufficient amount to repay to them, Hyde and Gleises, the amount of the two thousand dollars' draft, and the note for one thousand five hundred and sixty-eight dollars and seventy-four cents, should, by a decree of the Court, be ordered to be delivered to them.

After a full hearing of the case, on the petition, the answer, and the testimony, the District Court gave a decree in favour of the petitioners; and the defendants prosecuted this writ of error.

The case is fully stated in the opinion of the Court.

Mr. Key and Mr. Henderson argued the cause for the plaintiffs in error; and Mr. Coxe appeared and argued the cause for the defendants.

[Hyde and Gleises *v.* Booraem and Company.]

·Mr. Key and Mr. Henderson contended that the record shows, beyond cavil, that the special contract sued on was executory, and dependent in its terms of execution on both sides. · Booraem and Company agreed to cancel and extinguish· certain· liabilities and evidences of debt then due them by Hyde and Gleises, and to take up and extinguish others to become due, and part of which Booraem and Company had passed from their hands. On this consideration, Hyde and Gleises undertook to furnish Booraem and Company with new evidences of debt, payable at a more remote day than that to which any of the former liabilities extended, and to give approved endorsers on most of the new paper. Now, the obvious understanding of the parties to this agreement was, that so soon as the first set of securities was taken up and delivered to · Hyde and Gleises, that the second set of securities, prepared and placed in the hands of a mutual depositary, should then be delivered over. So understood Mr. Locket, the depositary. So did Booraem and Company, as shown by their subsequent letter, of date 26th May, 1837; and so it is averred by Hyde and Gleises. This is just; and Courts favour the principle of dependent contracts because most just. ·1 Peters, 465.

It will be observed, also, that this suit is not to recover money due by contract. Nor is it to recover damages for breach of contract. Nor is it an action of detinue and trover. But it is an attempt to have decreed a partial, specific performance of a contract, for delivery of chattels or choses in action. Now, the rule is universal, that he who asks a specific performance, must himself have performed or be in a condition to perform his part. 1 Wheat. R. 178; 2 Wheat. 290.

But this record admits the agreement, and acknowledges the default of the plaintiff; and thereupon the Court proceeds to reform and remodel the contract, to correspond with the delinquency of the plaintiff. This the defendant, insisting on the terms of his agreement, objects to.

The Court below has made in its direction a new contract, different from what the plaintiff set forth; adverse to the proof in the case, and to the will of the defendants. This is equally unauthorized by legislative or judicial power. 2 Sumner's C. C. R. 278; 1 Peters, 14; 4 Wheat. 316; 8 Wheat. 1. ·

We submit, too, that, though T. R. Hyde and Brothers, and W

T. Hepp, the endorsers, are not parties to the action, yet they must be noticed as parties to the contract, and parties whose interests are affected by this judgment. It is not sufficient that they may defend themselves when sued on the paper. The Court should not expose them to the jeopardy of a suit, by decreeing a delivery of their paper to Booraem and Company; unless it is found, in the terms of the contract, that the conditions and contingencies have happened on which it should be so delivered. If the decree is to affect their interests at all, as it manifestly does; will not the Court look to see what these interests and their agreement are? It is perceived, then, that these persons are the sureties of Hyde and Gleises, on the terms of their contract. And if Hyde and Gleises had consented to change the contract without consent of the sureties, they would not have been bound, even though beneficial to their interests. There is no equity against a surety; but such have a right to stand on the exact terms of their contract. 9 Wheat. 680; 12 Wheat. 511; Paine's C. C. R. 305; 3 Wash. C. C. R. 70.

Mr. Coxe, for the defendants in error, cited 4 Louisiana Rep. 465; 3 Louisiana Rep. 1; Code of Practice in Louisiana, 517, 487, 488, 489; 7 Martin's Rep. 21; 1 New Series, 187; 4 New Series, 21; 8 New Series, 379; 1 Peters, 620; Louisiana Code, article 602, 2040, 2042; 3 New Series, Louisiana Rep. 606, 607.

Mr. Justice STORY delivered the opinion of the Court.

This is the case of a writ of error to the Circuit Court of the eastern district of Louisiana. The original suit was brought conformably to the Louisiana practice by petition, in which Booraem and Company, the original petitioners, state, that two of the original defendants, Hyde and Gleises, merchants of New Orleans, being indebted to the petitioners in a considerable sum, did, in April, 1837, deliver to the petitioners certain promissory notes, to wit, three notes drawn by Hyde and Gleises to the order of, and endorsed by, T. R. Hyde and Brothers, dated the 6th of April, 1837, at six, twelve, and eighteen months, amounting to five thousand dollars; and three notes drawn by the same drawers to the order of, and endorsed by William T. Hepp, dated on the 6th of April, 1837, at seven, eleven, and fifteen months, amounting to five

[Hyde and Gleises v. Booraem and Company.]

thousand dollars; and three notes drawn by the same drawers, to the order of Booraem and Company, dated the 6th of April, 1837, at nine, thirteen, and seventeen months, amounting to two thousand seven hundred and fifty dollars and sixty-four cents. The petitioners then state that on receipt of the notes, they, the petitioners, agreed to extinguish any and all demands which they had against Hyde and Gleises, or for which the petitioners had become responsible by account, note, or acceptance, previous to the 6th of April, 1837; and which, including interest and exchange, amounted to eleven thousand seven hundred and ninety-eight dollars and sixty-four cents. The petitioners then aver that they did pay and extinguish the said demands, with the exception of a draft for two thousand dollars, and a note for one thousand five hundred and sixty-eight dollars and seventy-four cents, which they were unable to provide the means of taking up, and which have since been taken up by Hyde and Gleises. The petition then goes on to state that these notes were left in the hands of H. Locket, Esq., the other defendant, at New Orleans, who had been notified not to dispose of them to the prejudice of the rights of the petitioners; that they had demanded the delivery of five of the notes, to wit, three endorsed by Hepp, (the others drawn to the order of, and endorsed by Hyde and Brothers, being omitted in this part of the petition by mistake,) and a balance in cash of four hundred and sixty-nine dollars and twelve cents, according to the account annexed; that they had also demanded a delivery of the same five notes from Locket; but he had refused to deliver the same. The petitioners therefore prayed, that they might have a judgment of the Court decreeing a delivery to them by Locket of the three notes drawn by Hyde and Gleises to the order of T. R. Hyde and Brothers, and two of the three notes drawn to the order of William T. Hepp, one at eleven months for fifteen hundred dollars, and the other for two thousand dollars at fifteen months; and decreeing Hyde and Gleises to pay the said balance of four hundred and sixty-nine dollars and twelve cents; and they also prayed for further relief.

Such is the substance of the petition, which does not seem to be drawn with entire accuracy and precision. Annexed to the petition is a receipt, signed by Booraem and Company, acknowledging the receipt of the nine notes described in the petition, and

P 2

that they are given for the purpose of extinguishing the demands against Hyde and Gleises, before the 6th of April, 1837, as stated in the petition; and then adding the following clause: "Should Joshua B. Hyde, of the firm of Hyde and Gleises, now in New York, have settled for the draft of two thousand dollars, paid by Booraem and Company, on the 15th of March, 1837, or for the sum of two thousand one hundred and twenty-eight dollars and thirty-six cents, by notes or otherwise, the said Booraem and Company are bound to take them up at maturity, and are included in said arrangement herein first specified."

Hyde and Gleises in their answer admit the drawing and endorsing of the notes, and aver that they were prepared for delivery to the petitioners according to the receipt, which contains stipulations binding upon the petitioners, and forming conditions precedent to the delivery of the notes; that to secure a compliance with the agreement, it was mutually agreed that the notes and receipts should be deposited in the hands of Locket, to be delivered to the petitioners when the several conditions mentioned in the receipt were performed, and only in that event were to be delivered; that the petitioners totally neglected and refused to perform the conditions; and in consequence of such omission and neglect the defendants, Hyde and Gleises, were forced to pay and did pay a note of one thousand five hundred and sixty-four dollars and seventy-four cents, and an acceptance of two thousand dollars, with costs and damages, both of which the petitioners had assumed to pay. That the friends of the defendants, Hyde and Gleises, were induced to endorse the notes by the reasonable expectation that the defendants would be enabled to meet the notes from the profits of their business, and save their endorsers from loss, if the extensions stipulated in the receipt were granted upon all the demands of the petitioners: that by reason of the failure of the petitioners to comply with the agreement, and the payments they were forced to make, they exhausted their resources and credit, and their business was destroyed, and their ability to protect their endorsers was utterly at an end; and they conclude by denying their indebtment in the manner stated in the petition, and pray that the petitioners may be cited to answer in reconvention, and be condemned to pay the amount of five thousand dollars to the defendants as damages.

[Hyde and Gleises *v.* Booraem and Company.]

The defendant, Locket, by his answer, asserted that the notes were deposited in his hands by the joint consent of the petitioners and Hyde and Gleises, to be delivered to the petitioners by him when all the conditions in the receipt were fulfilled by the petitioners; and he avers that the agreement never was fulfilled on the part of the petitioners, and that they are not entitled to the notes.

The endorsers also filed a petition of intervention in the cause; which, however, was afterwards withdrawn. The petitioners replied to the plea of reconvention, denying their indebtment.

Upon this state of the pleadings, the cause came before the Circuit Court for decision, without the intervention of a jury, by the consent of the parties, and the final decision was made by the district judge, upon an examination of the evidence offered by the parties. The decree was, in effect, that the defendants ought to pay to the petitioners out of the notes the balance of eleven thousand seven hundred and eighty-nine dollars and sixty-four cents, after deducting the amount of the note of one thousand five hundred and sixty-seven dollars and seventy-four cents, and of the acceptance of two thousand dollars paid by the defendants, and the interest thereon; and that for this purpose four of the notes in the possession of Locket, to wit: two drawn by Hyde and Gleises to the order of T. R. Hyde and Brothers, of the 6th of April, 1837, one for two thousand dollars, payable in eighteen months, and the other for one thousand five hundred dollars, payable in twelve months, and two other notes drawn by Hyde and Gleises to the order of W. T. Hepp, dated 6th of April, 1837, one for two thousand dollars, payable in eighteen months, and the other for one thousand five hundred dollars, payable in eleven months, amounting in all to seven thousand dollars, to be delivered by Locket to the petitioners or their attorney; and that the remaining five notes be delivered to Hyde and Gleises; and that judgment be for the petitioners against Hyde and Gleises for the remaining unsatisfied sum due to the petitioners, of seven hundred and seventy-six dollars and ninety cents. with interest from the decree.

It is from this judgment that the present writ of error is brought; the district judge having, at the request of the defendants' counsel, made a statement of the facts on which he relied;

and the record containing, at large, the whole evidence at the hearing.

One of the embarrassments attendant upon the examination of this cause, in this Court, is from the manner in which the proceedings were had in the Court below. We have no authority, as an appellate Court, upon a writ of error, to revise the evidence in the Court below, in order to ascertain whether the judge rightly interpreted the evidence or drew right conclusions from it. That is the proper province of the jury; or of the judge himself, if the trial by jury is waived, and it is submitted to his personal decision. We can only re-examine the law, so far as he has pronounced it, upon a statement of facts, and not merely a statement of the evidence of facts, found in the record in the nature of a special verdict on an agreed case. If either party in the Court below is dissatisfied with the ruling of the judge in a matter of law, that ruling should be brought before this Court, by an appropriate exception in the nature of a bill of exceptions, and should not be mixed up with his supposed conclusions in matters of fact; unless this is done, it will be found extremely difficult for this Court to maintain any appellate jurisdiction in mixed cases of the nature of the present. The same embarrassment occurred in the case of Parsons v. Armor, 3 Peters, 413; and was there rather avoided by the pressure of the circumstances; than overcome by the decision of the Court. Taking this case, then, as that was taken, to be one where there is no conflict of evidence, and all the facts are admitted to sta d on the record, without any controversy as to their force and bearing in the nature of a statement of facts, and looking to the allegations and prayer of the petition, and the facts stated by the judge, the question which we are to dispose of is, whether, in point of law, upon these facts, the judgment can be maintained. We are of opinion that it cannot be, and shall now proceed to assign our reasons.

In the first place, it is a material circumstance, that the petition is not to recover pecuniary compensation or damages for any supposed benefit conferred upon Hyde and Gleises under the agreement; but it is in the nature of a bill for a specific performance of that agreement by a delivery up of a part of the notes deposited in the hands of Locket, not upon the ground of an entire performance of the agreement on the part of the petitioners;

[Hyde and Gleises *v.* Booraem and Company.]

but confessedly upon the admission, that they have not performed it, except in part; and therefore seeking a part performance only, pro tanto, from the other side. Now, the present being that in the French law, which constitutes the basis of that of Louisiana, (Code of Louisiana, art. 1760 to art. 1763,) is called a commutative contract, involving mutual and reciprocal obligations, where the acts to be done on one side form the consideration for those to be done on the other; it would seem to follow, upon principles of general justice, that if they are to be done at the same time, neither party could claim a fulfilment thereof unless he had first performed or was ready to perform all the acts required on his own part. And this accordingly will be found to be the rule of the Civil Code of Louisiana, (art. 1907,) where it is declared that, in commutative contracts, where the reciprocal obligations are to be performed at the same time, or the one immediately after the other; the party who wishes to put the other in default, must, at the time and place expressed in or implied in the agreement, offer, or perform as the contract requires that which on his part was to be performed, or the opposite party will not be legally put in default. And again, (art. 1920 and art. 2041,) on the breach of any obligation to do or not to do, the other party in whose favour the obligation is contracted, is entitled either to damages, or, in cases which permit it, to a specific performance of the contract, at his option; or he may require the dissolution of the contract. But it is nowhere provided, that the party who has omitted to perform the acts which he has contracted to perform, can entitle himself, if the other party has been in no default, either to a specific performance, or to damages, or to a dissolution of the contract; that would be to enable the party committing the default to avail himself of his own wrong, to get rid of the contract.

But it is supposed that where a party has performed his contract only in part, he may, nevertheless, be entitled to a performance, pro tanto, from the other side; although it has been by his own default, that there has not been an entire performance. And certain cases in the Louisiana Reports have been relied on to establish this doctrine. But these cases, when examined, will not be found to justify any such broad and general conclusion. They establish no more than this: that where, in a commutative contract, there has been a part performance on one side, from

which a benefit has been derived by the other side, the other party is compellable to make compensation in pecuniary damages to the extent of the benefit which he has received, deducting therefrom all the damages which he has sustained by the want of an entire performance thereof. There is nothing unreasonable in this doctrine; and although it may not be in many cases recognised and acted upon in the common law, it is often enforced in equity. But this doctrine is not applicable to all cases of commutative contracts, generally, but only to cases where the contract is susceptible, from its nature and objects, of divisibility; and where, not a specific performance, but a mere pecuniary claim in the nature of a quantum meruit is sought to be enforced. Thus, in the case of Loxeau *v.* Declonat, (3 Louis. R. 1,) where A. agreed to build a sugar-house for B., for a certain price, and B. was to pay for it, when the work was completed, and to furnish materials; it was held that if A. failed to complete the work in the manner stipulated, yet, if B. used the sugar-house, he was bound to pay for it in money; the value of the labour he had expended upon it; that is to say, the value of the benefit he had derived from the labour; for the Civil Code of Louisiana (art. 2740) contemplates that B., in such a case, is entitled to damages for the losses sustained by him from the want of a due fulfilment of the contract. The same decision was made under similar circumstances in the case of Etre *v.* Sparks, (4 Louis. R. 463.)

But, where the entire fulfilment of the contract is contemplated by the parties as the basis of the arrangement, the contract is treated as indivisible; and neither party can compel the other to a specific performance, unless he complies with it in toto. Thus, if A. should agree to sell B. a ship for ten thousand dollars, or a horse for five hundred dollars, and B. should pay a part only of the purchase money, as, for example, a fifth or tenth part thereof; it would hardly be pretended that he would be entitled to a specific performance, pro tanto, by a conveyance of a fifth or tenth part of the ship or horse. And, on the other hand, the vendor would have no pretence to require that, if he had a good title only to an undivided fifth or tenth of the ship or horse, that the purchaser should be compellable to take that part and pay him, pro tanto—the purchase money. In every such case it would be manifest that the contract of sale would be indivisible; and that

each party would have a right to insist upon an entirety of performance. Now, that is precisely the ground applicable to the present case. The contract between the parties, was, from its very character and object, entire and indivisible. Hyde and Gleises, and their endorsers, entered into the new agreement, and gave the new notes upon the faith and confidence that the petitioners would punctiliously perform the whole of it on their side. The object was to procure a prolonged credit and delay of payment to Hyde and Gleises for all their debts contracted with the petitioners; and thus to enable them to retrieve their affairs, rescue themselves from impending ruin, and to make their endorsers safe. This could be, only, by the petitioners taking up all the notes and acceptances already given by Hyde and Gleises, according to the stipulations of the petitioners, and thus enabling them to carry on their operations in business: and it seems to have been contemplated on all sides, that, by the omission, Hyde and Gleises might be compelled to stop, and their endorsers be brought into peril; and, indeed, the record shows that the event actually occurred. If then Hyde and Gleises have failed to realize the benefits contemplated by the arrangement, by the default of the petitioners, what ground is there to assert that they, or their endorsers, ought to be compelled to a specific performance of a contract pro tanto, when the consideration was a punctilious performance of the entirety? The most that could, under such circumstances, be contended for, would be to say, not that Hyde and Gleises should be compelled to give up any part of the endorsed notes; but that they should be bound to repay to the petitioners, in money, the amount paid by them for Hyde and Gleises, deducting all damages sustained by the latter by reason of the nonperformance of the contract, as in the cases already cited. But that is not the object or the prayer of the allegations in the present petition.

In the next place, there is another view of the case still more striking and conclusive. It is not true, as the petition supposes, that there was any actual delivery of the notes to the petitioners; (which might have presented another question;) but in point of fact, as the evidence fully establishes, the notes were deposited in the hands of Locket, to be delivered over to the petitioners, only upon their full performance of the stipulations on which they were

to have effect. It is admitted that those stipulations have never been performed. Upon what ground, then, can the petitioners now demand a delivery of any of the notes, they not having fulfilled the conditions of the deposit? It has been said that here, by the giving up of the new notes, the old debts due by Hyde and Gleises have been extinguished by novation; and, therefore, their sole remedy lies upon the new contract and notes given in pursuance thereof. But that doctrine is by no means true, as it is attempted to be applied to the circumstances of the present case. A novation will, indeed, if it be absolute and unconditional, amount to a direct extinguishment of the original debt by substituting the new contract in its place. This is sufficiently apparent from the language of the Civil Code of Louisiana, art. 2181 to 2194. But no extinguishment is wrought if the arrangement is conditional, and the conditions are not fully complied with. Pothier (Pothier on Obligations, 550, 551) states this in the most clear and explicit terms. "It follows," says he, "that if the debt of which it is proposed to make a novation by another engagement is conditional, the novation cannot take effect, until the condition is accomplished:" therefore, if there is a failure in the accomplishment of the condition, there can be no novation, because there is no original debt to which the new one can be substituted. Vice versa, if the first debt does not depend on any condition but the second engagement, intended as a novation, is conditional, the novation can only take effect by the accomplishment of the condition of the new engagement, before the first debt is extinct.

Now, that the giving of these new notes, by way of novation for the old debts, was conditional, is apparent from the fact that they were not delivered to the petitioners, but were deposited in the hands of Locket, "subject to the provisions of the receipt," and to be delivered over by him, only when these conditions were complied with by the petitioners. So all parties must have understood the transaction; and the deposit in any other view would be as unaccountable as it would be unmeaning. The petitioners have never, as they admit by their petition, complied with these conditions. How, then, can they, consistently with all rules of law, insist upon the transactions being a complete and absolute novation, entitling them to the delivery of the substituted securities in lieu of the old debts?

[Hyde and Gleises *v.* Booraem and Company.]

Nor is the consideration to be lost sight of, that the arrangement does not merely limit itself to the immediate interests of the debtors and the creditors. The endorsers have rights also, which must have been intended to be provided for and secured by the deposit; to which, in reason, they must be presumed to have been parties, and given their assent. We have no right to presume that they would have endorsed these notes without the entire confidence that the new arrangement would be carried out and fulfilled with the most scrupulous punctuality. Their own recourse over against Hyde and Gleises might otherwise be most materially and injuriously affected. Their object must have been by securing to Hyde and Gleises the prolonged credit, to have enabled them to meet the new payments, and thereby exonerate themselves from ulterior responsibility. If, therefore, we were to give effect to the present suit, the conditions of the novation not having been fulfilled, we should either deprive the endorsers of all the benefits and securities contemplated in the arrangement; or, at all events, leave them exposed to a responsibility, as endorsers, from which by the very deposit they meant to guard themselves.

There are other embarrassing difficulties in the frame of the decree, as to the manner in which it disposes of the notes, and divides the responsibilities of the respective endorsers without their consent, and proceeding to adjudge money to the petitioners for the balance. But it is unnecessary to dwell on them, for, upon the grounds already stated, we are of opinion that the judgment ought to be reversed, and the cause remanded with directions to the Court below to dismiss the suit with costs for the original defendants.