EZRA CONOVER ET AL., DEFENDANTS IN ERROR, v. ATLANTIC CITY SEWERAGE COMPANY ET AL., PLAINTIFFS IN ERROR.

Argued November 23, 1903—Decided May 13, 1904.

The plaintiffs declared in ejectment for a strip of land fourteen (14) feet wide and about six hundred (600) feet long, extending to tidal waters and designated in their deed as "a certain ditch." At the trial their claim of title rested upon a deed containing the following clause: "And also the said party of the second part [the plaintiffs] is to have the exclusive privilege and use of a certain ditch that leads," &c. *Held*, that the grant of this exclusive privilege was not a conveyance of land for the recovery of the possession of which the action could be maintained.

On error to the Supreme Court.

For the plaintiffs in error, *Eli H. Chandler* and *George A. Bourgeois.*

For the defendants in error, *Thompson & Cole* and *William M. Clevenger.*

The opinion of the court was delivered by

VREDENBURGH, J. The plaintiffs declared in ejectment for the recovery of the possession of a certain strip of land in Atlantic City by the following brief description, which I deem of importance to transcribe here in full, viz.: "A certain tract of land fourteen feet in width, more or less, beginning at a point in the northerly line of Baltic avenue, distant twenty feet from the westerly line of South Carolina avenue, and running (1) westwardly along said Baltic avenue fourteen feet, more or less, to a point, and extending thence northwardly of this width to the south fork of Clam creek, bounded on the east and west by lands formerly owned by Judith Hackett, being a part of the lands conveyed to the plaintiffs herein by Richard Hackett and others, by deed

dated the third day of February, eighteen hundred and seventy-five, and recorded in the clerk's office of Atlantic county, in Book 73 of Deeds, folio 416, &c. Said land being designated in the aforesaid deed as a certain ditch, and also mesne profits and damages to the amount of five thousand dollars." The premises set forth in this deed (which is the foundation of the plaintiffs' claim of title), when compared with the dimensions of the tract of land as declared for, do not support the declaration in respect to the width of the land so claimed. That conveyance, after granting the plaintiffs, and to their heirs and assigns, a separate tract of meadow land (adjoining the tract declared for), describing it by precise metes and bounds, and stating that it contains three acres, three-quarters and twenty-four perches, thus continues, viz., "and also the said party of the second part [the plaintiffs] is to have the exclusive privilege and use of a certain ditch that leads from the north end of South Carolina avenue and running northwestwardly to the south fork of Clam creek, and all small streams of water that lead into said ditch to remain as they are; also the same privilege of a twenty-foot roadway alongside of said ditch, beginning two hundred feet northwardly of the end of said avenue, with the privilege of a turnway at the oyster platform (on the east side) to the aforesaid Clam creek, their heirs and assigns forever, except the party of the first part, their heirs and assigns, is not to be debarred from passing on or over said road to his or their meadow lands and back. Being a part of a larger tract of land that was set off by the commissioners appointed to divide the real estate of Jeremiah Leeds, deceased, unto Judith Hackett, late wife of the aforesaid R. Hackett, as part of her share in said estate, the said Matilda Hammond, Joseph Hackett and Josephine Reeves being the heirs of the said Judith Hackett, deceased. Reference to the division of said estate will appear at the office at Mays Landing. And, further, it is also agreed that there shall be no ditch or ditches made to lead out of the present ditch in any point whatever from his, her or their *orders* forever. Together

with all and singular the buildings," &c.   *Habendum,* in the usual form, followed by the ordinary covenants of full warranty.

At the jury trial of this ejectment issue, held before the Supreme Court Circuit, the plaintiffs had recourse to parol proof to define the dimensions of the *locus in quo*—the ditch in question.   Their evidence showed that this ditch had been, at some time during the years of 1853 or 1854, dug in the meadow soil by one of the plaintiffs' grantors and extended in a straight line for a length of about six hundred feet from its beginning point to the tidal waters of the creek at a width of six feet and a depth of about two and a half feet.   Subsequently it was widened so that, at the date of the plaintiffs' deed as well as at the commencement of the ejectment suit, its width varied from about six to eight feet, at Baltic avenue, to about twelve to fourteen feet at the widest part near the oyster platform.   The bed of the ditch was testified to have originally been considerably above ordinary low-water tide and to have been dry at low tide, except in places where fresh water ran in from springs and the small streams of water that led into the ditch.   The tidal waters flowed in and out of it at each tide.   The use for which the ditch was originally intended, and to which it was actually put by the plaintiffs, was the planting, culture and marketing of oysters.   It is in the evidence stated that the fresh water which came into the ditch from the springs and streams freshened the oysters and assisted in their growth.   By means, also, of the tidal waters flowing into this ditch the oyster owners were enabled to take their boats or skiffs up into it and gather the oysters and transport and sell them at Atlantic City.   This use continued until about the year 1886, when the introduction of Atlantic City sewerage in the ditch, against the consent of the plaintiffs, compelled them to abandon the business and to cease the culture of oysters there.   Afterwards, and before this suit was begun, other persons, without the plaintiffs' permission, filled up the ditch for the greater portion of its length with solid substances.   The lands over and into which

this ditch extends were, at the commencement of this suit, in the possession of and claimed to be owned by the four defendants, who defend, in severalty. At the close of the plaintiffs' testimony the learned trial justice ordered a judgment of nonsuit to be entered against the plaintiffs, holding that an action of ejectment would not lie for the recovery of the land declared for. It will be conceded that if, under the proper construction of the deed, only the use of the waters flowing in the ditch was conferred upon the plaintiffs, that they have misconceived their remedy. "When the water only belongs to the plaintiff and the soil to another, the remedy is by an action on the case for diverting (or obstructing) the water-course." *Running. Eject.* 132. In a very early case, decided in England, it was held that an ejectment would not lie *"pro quodam rivulo, sive aquæ cursum,* called D, because it is impossible to give execution of a thing which is transient and always running." *Lib.* 131. Professor Washburne, in his work on *Real Property* (at page 26), points out "that there is properly no property in water beyond its use; a man may have an easement to enter upon another's land and take water therefrom for the benefit of his own estate, but he may not, as an easement, have a right to go upon another's land to fish in those waters and take fish therefrom, because it is in the nature of a profit out of it." It should be noted that the plaintiffs' declaration is not framed for the recovery of land covered by water, nor to recover water *pro stagno*—standing water. (The word *stagnum* comprehends both land and water.) That this grant creates, at least, an easement in favor of and appurtenant to the tract of land first set forth in the deed—the dominant tenement—cannot admit of doubt. *Richardson* v. *International Pottery Co.,* 34 *Vroom* 248; *Mitchell* v. *D'Olier,* 39 *Id.* 375, and authorities there cited. But the plaintiffs in error insist that the above-quoted clause of this deed, namely: "Also to have the exclusive privilege and use of a certain ditch that leads," &c., operates to convey to them an actual estate or title in the said strip of land over and upon which the said ditch

extends; that ejectment will lie to recover its possession whether water now flows in it or not; and that this exclusive privilege and use of the ditch is a grant of the land itself for which ejectment will lie and possession of which can be delivered by the sheriff.

The question of law thus presented is quite formidable in its difficulties, but the better opinion seems to me to be against the plaintiffs' insistment. If the term "ditch" had a fixed. or determinative signification in common law conveyancing, as very many words so employed have acquired by long and accepted use, such, for instance, as the word "messuage," and we could give it a conclusive effect, without respect to the presumable intent of the parties to the deed, the case would be different. But no technical effect or force *ex vi termini* in conveyancing has, so far as I can discover, been attributed to the word by any text-writer of authority, or by any decision of the courts, except as next referred to and distinguished. In certain of the western states, where ditches are largely used for irrigation and mining purposes, statutes have been passed, under which their courts have construed the term. A recent text-writer on irrigation (*Kinney* (*ed. of* 1894), § 224), speaking of those decisions, has given expression to the following, viz.: "A ditch used for the conveyance of water for any beneficial purpose is not a mere easement; neither is it a corporeal or incorporeal hereditament appurtenant to the land. It is itself land," citing as his reliance for the statement the case of *Reed* v. *Spicer; 27 Cal. 57*, and some other less pointed authority. But I fail to find from their examination that they justify the text, except within localities affected by those statutes. The premises of the deed of the *Reed* v. *Spicer* case were thus expressed, viz.: "All the right of way in and upon the land owned by the said party of the second part in, to and for the ditch called 'Mountain Brow Water Company,' together with," &c. Here a right of way in and upon land was expressly granted for a certain ditch which was actually a part of the land conveyed, and was therefore "itself land." But no grant of land was

expressed to be made by the plaintiffs' deed upon which the ditch in question was constructed. Quite to the contrary, the context of the deed shows that the grantors, when they intended to convey land, expressed that intention in explicit language. When they selected language to convey land they used appropriate terms to define its exact extent and quantity, and when they attempted to grant easements or privileges in other of their lands they chose terms appropriate to that end, as follows—*first,* they granted the exclusive privilege and use of the ditch in question, together with all small streams of water that lead into it; *second,* the same privilege of a roadway alongside of said ditch, with an exception qualifying the privilege so as to permit the grantors, their heirs and assigns, to pass on or over the roadway to and from their other meadow lands and back (it is important to note here that the effect of similar qualifications upon a previously-granted use was before the court in the above-cited case of Richardson *v.* International Pottery Company, in the form of reservations out of the use so granted). In that case this court held that a deed which conveyed a tract of land (adjoining a canal and a basin constructed with an opening into the canal), "together with the free and common use of said basin to load and unload at all times, without let or hindrance from the grantor, his heirs and assigns forever," created an appurtenant and continuous easement, and this was so, notwithstanding the clause creating the easement also contained express reservations therefrom, in favor of the grantor, of "perpetual rights of way upon and over the top of the basin bank   *   *   *   and to and over the bridge crossing the mouth of said basin," &c.; and *third,* a restriction upon the grantors in favor of the grantees that no ditch or ditches should be made "to lead out of the present ditch in any point whatever," &c. These clauses serve to strengthen the inference that those streams of water leading into the main ditch were intended to be preserved, and also protected against depletion from any other ditches made to lead the waters away from the former. The language thus chosen

was appropriate to create easements in land, not to confer title to land. From the circumstances disclosed by the evidence, the primary object of the grant seems to have been to confer upon the plaintiffs the exclusive use of the waters for the above-expressed business purpose, whether they ran in the small streams or in the ditch. It does not purport (certainly not in express terms) to convey the use of the land or soil in the bed of either the ditch or the streams, and if we are to regard its words as intended to convey such lands, they lack the requisite certainty of expression to effect such an intent. The qualities upon which the common law grounds —what may properly be termed its peculiar fondness for land—and for the employment, in its conveyance, of technical and exact terms adapted to that end, stand opposed to the contention of the plaintiffs in error. Nor does the decision of this court in *Fitzgerald* v. *Faunce,* 17 *Vroom* 536, sustain the plaintiffs' insistment. The deed (from Whitall to Faunce) there construed conveyed to the grantee and his heirs and assigns "all that lot of ground situate, &c., bounded as follows: Beginning [then follows a description of land by metes and bounds] and also the sole right, privilege, use and enjoyment at all times, for all purposes of fishing whatsoever, and for no other purpose, of the two following lots: The first beginning at [then follows a description of the two lots by metes and bounds] and also the rights and privilege of laying off the nets used on the said ground at the flood fishing as low down as the river as a course of south," &c., "and also the right and privilege of laying the nets used during the season of shad and herring fishing to dry on the meadow of the said Samuel Whitall, between," &c. This court held that this deed to Faunce conveyed an actual estate in this strip of land next to the river, including the upland and river bank, and he became thereby the riparian owner. The opinion stated the legal rule to be that a grant of the exclusive use of lands, as it excludes the grantor from all benefit in it, is a grant of the soil itself, and not a mere easement. But we see that this latter grant is quite dis-

tinguishable from that of the plaintiffs. There the "sole right, privilege, use and enjoyment for purposes of fishing" was annexed to a lot of land particularly described and conveyed as such, and the intent was plainly expressed to confer this privilege *together with* and as a *part of* the soil and *land* itself. It was properly there held that "a grant of the exclusive use of land is a grant of the land." But whether or not the grant of the exclusive use of this ditch in question has the force of a conveyance of the exclusive use of land, is the very subject of the present controversy.

As I conclude, for the reasons above given, that it has not, I shall vote to affirm the judgment below.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, BOGERT, VREDENBURGH, VROOM, GRAY. 8.

*For reversal*—DIXON, FORT, GREEN. 3.