(No. 7196.   June 29, 1945.)

WILLIAM E. WILLIAMS and DELLA WILLIAMS, his wife; HARRY A. SHAW, JR., and MABEL SHAW, his wife, Respondents, v. ISAAC J. NEDDO III and EUNICE NEDDO, his wife; DEWARD JOHN and HOPE JOHN, his wife; and MELVIN M. WARD, as Watermaster of Raft River Water District No. 8-C in Cassia County, Appellants.

[163 P. (2d) 306.]
On Rehearing November 14, 1945.

Bissell and Bird for appellants.

S. T. Lowe and Kales E. Lowe for respondents.

MILLER, J.—This action was commenced June 29, 1942, by William E. Williams and Della M. Williams, his wife, Harry A. Shaw, Jr., and Mabel Shaw, his wife, as plaintiffs, respondents here, for the purpose of perpetually enjoining, restraining and estopping the defendants, Isaac J. Neddo, III, and Eunice Neddo, his wife, Deward John and Hope John, his wife, their grantees and successors in interest, and each and all of them, from using a certain ditch for conveying water to their land, or from cutting, obstructing or interfering with the use of said ditch, or from diverting any water therefrom; that the defendant, Melvin M. Ward, and his successors in office, as water-master of Raft River District No. 8-C, in Cassia County, Idaho, be perpetually enjoined, restrained and estopped from turning into said ditch any water to which the de-

fendants or either of them are entitled. The Neddos only are appellants. Defendants filed a demurrer to the complaint claiming, among other things, that there was a misjoinder of parties plaintiff. The demurrer was overruled. The complaint alleges and the answer admits that since about the year 1880 the respondents, William E. Williams and Della M. Williams, their grantors and predecessors in interest, were and now are the owners in the possession and entitled to the possession of the following described real estate in the county of Cassia, state of Idaho, to-wit:

Lots 3 and 4, and the SE¼SW¼ of Sec. 19; Lots 1 and 2, and the E½NW¼ of Sec. 30, all in Twp. 12 S., R. 27 E.B.M.;

and that since about the said year 1880 the respondents Harry A. Shaw, Jr., and Mabel Shaw, their grantors and predecessors in interest, were and now are the owners in the possession and entitled to the possession of the following described real estate in said county of Cassia, state of Idaho, to-wit:

Lots 3 and 4 in Sec. 30, Twp. 12 S., R. 27 E.B.M., and that all the said land is now being cultivated, is arid in character and requires water for the irrigation thereof, in order to produce beneficial agricultural crops thereon. The complaint also alleges and the answer admits that the appellants, Isaac J. Neddo, III, and Eunice Neddo, are the owners of real estate in the county of Cassia, state of Idaho, to-wit:

E½SW¼ of Sec. 30, Twp. 12 S., R. 27 E.B.M.,
and that the defendants, Deward John and Hope John, his wife, at the time of the commencement of this action were in possession of said real estate as tenants. Isaac J. Neddo, III, acquired the above described land from his father, who purchased it at a tax sale from Cassia County in 1927. Prior to 1907 or 1908 the Neddo land was Government domain. The original ditch, known as the "Darby Dam Ditch", and involved in this controversy, was constructed in 1886 and heads in Raft River near the north boundary line of Sec. 6, Twp. 13 S., R. 27 E.B.M. It extends in a northerly direction through the W½E½, Sec. 31, Twp. 12 S., R. 27 E.B.M., and enters Sec. 30 and continues north near the center line of said Sec. 30 for approximately ¼ mile, where it crosses the center line of said Sec. 30 and

extends in a northerly direction until it enters the NW¼ of Sec. 30 at the SE corner thereof, and then extends in a northeasterly direction across the center line of Sec. 30 for approximately 1/8 mile, where it turns and runs in a northwesterly direction across the center line of Sec. 30 and crosses the SE¼SW¼ of Sec. 19, Twp. 12 S., R. 27 E.B.M. The Darby Dam Ditch was extended in 1898 from near the SE corner of the NW¼ of said Sec. 30 to a point approximately ¼ mile east of the SW corner of the NW¼ of said Sec. 30, and ever since the year 1898 was used in conveying water from the Darby Dam Ditch onto what is now Williams' land for the irrigation thereof. In 1915 or 1916 a "branch ditch" was constructed from the Darby Dam Ditch at a point just south of the center line of the E½SW¼ of Sec. 30, Twp. 12 S., R. 27 E.B.M. and extending a little north of west through the said E½SW¼ onto the Shaw land and running thence in a northerly direction and entering the NW¼ of said Sec. 30, where it joins the ditch constructed in 1898 and runs thence in a northerly direction onto the Williams land, and ever since 1915 or 1916 this branch ditch has been used in conveying water from the Darby Dam Ditch onto what is now the Shaw land and the Williams land for the irrigation thereof.

The appellant Isaac J. Neddo, III, and his immediate predecessor in interest, Isaac J. Neddo, Jr., claim to have acquired the right in 1928 to use the Darby Dam Ditch by permission from Robert Matheson, manager of the Albion-Idaho Land Company.

January 24, 1944, the trial court made and filed findings of fact, conclusions of law and judgment and decree. Therein it was found that during the year 1886 the Darby Dam Ditch was constructed by J. M. Darby, Tom and Bob Bishop and Fritz Reepen, and that Tom and Bob Bishop were grantors and predecessors in interest of the respondents Williams. It was also found that in 1898 the Darby Dam Ditch was extended from a point near the SE corner of the NW¼ of Sec. 30 and running thence directly west along the south boundary line thereof, and that ever since the spring of 1898 has been continuously used by the grantors and predecessors in interest of respondents Williams for the irrigation of their lands. The trial court further found that during the year 1915 or 1916 the grantors and predecessors of respondents constructed the

branch ditch diverted from the Darby Dam Ditch for the irrigation of a portion of the land owned by respondents Harry A. Shaw, Jr., and Mabel Shaw, and William E. Williams and Della M. Williams, and that ever since said date said ditch has been continuously used for the irrigation of respondents' lands. The Court further found that in November, 1927, at the time the Albion-Idaho Land Company, by its manager Robert Matheson, gave permission to the appellants to use the Darby Dam Ditch, it had no right, title or interest in the ditch, or power or authority to grant appellants or either of them the right to use the same; that appellants did not use the ditch in controversy until the year 1938, and that the use thereof by appellants in 1938 and thereafter was wrongful and unlawful, without the consent or authority of the respondents or either of them, and that the respondents William E. Williams and Della M. Williams, Harry A. Shaw, Jr., and Mabel Shaw, are the joint owners of the ditch in controversy and there is neither a misjoinder of parties plaintiff nor a misjoinder of causes of action, and that the respondents and their grantors and predecessors in interest have openly, notoriously, continuously, exclusively and adversely, for a period of more than five years prior to the filing of this action, excepting when interferred with by the appellants, used and claimed said ditches, and that the appellant Isaac J. Neddo, III, had, wrongfully and unlawfully, against the will and without the consent of the respondents, continued to cut said ditch and divert the water therefrom and thereby has prevented respondents from the use of the same for the irrigation of their said lands. The judgment and decree describes the ditches heretofore mentioned and provides that said ditch or ditches is appurtenant to the lands owned by the respondents William E. Williams and Della M. Williams, his wife, and Harry A. Shaw, Jr., and Mabel Shaw, his wife, located in the county of Cassia, state of Idaho, heretofore described. That the appellants have no right, title, claim or interest of, in or to said ditch or ditches or either of them, or any part thereof, and have no right to use the same or transport or convey any water through the same or any part thereof; that the appellants, their heirs, executors, administrators, successors and assigns be and they are and each of them is hereby perpetually enjoined, restrained and estopped from making, asserting or claiming any right, title or interest in or to the said ditch or ditches, or from using or attempt-

ing to use the said ditch or ditches or any part thereof, for transporting or conveying any water through the same, and from cutting, obstructing or in any manner interfering with the said ditch or ditches. April 10, 1944,. Isaac J. Neddo, III, and Eunice Neddo appealed from the judgment and decree.

Appellants list fourteen assignments of error. Under "Points and Authorities" four further assignments are listed. The first eleven assignments are directed to errors in the findings of fact, "and are urged and argued together". Assignments No. 12, 13 and 14 "are directed to the conclusions of law, made by the court, and will therefore be referred to, urged and argued together'. Assignment No. 15 "is directed to the decree entered". Assignment No. 16 "is directed to the error of the court in overruling defendants' demurrer and disregarding defendants' affirmative defense of misjoinder of parties plaintiff and misjoinder of causes of action". Assignment No. 17 "is directed to the refusal to make findings and conclusions and refusal to enter the decree prepared by the defendants." Assignment No. 18 "is directed to the error of the court in admitting plaintiffs' Exhibit A".

Immediately preceding the assignments it is stated:

"There are really, and fundamentally, only five questions involved—

"First, was there a proper joinder of parties plaintiff? This question was raised by the demurrer and in the answer.

"Second, is it necessary to plead and prove adverse possession and prescription?

"Third, does the proof establish adverse possession and prescription?

"Fourth, even if proven, can the ownership of a ditch be so established? Or is the right limited to an easement?"

■ Respondents in their brief call attention to the foregoing questions, quote the same and observe: "This appears to be a fair statement of the issues involved in the appeal and will be the basis of this argument." Counsel for appellants, after grouping the assignments of error,

states: "However, for the purpose of preserving logical sequence, we will argue assignment of error number sixteen first". The argument then proceeds with the first question heretofore quoted, as one of the fundamental questions involved. We can agree with counsel that the questions heretofore quoted fundamentally cover the issues in this controversy. As to the first question it would seem that the same is disposed of by Section 5-312, Idaho Code Annotated, which provides:

"All persons having an interest in the subject of the action, and in obtaining relief demanded, may be joined as plaintiffs, except when otherwise provided in this code."

In the case of *Paulson, et al, v. City of Portland,* 16 Ore. 450, 19 P. 450, 1 L.R.A. 673, some two hundred persons brought a suit in circuit court to enjoin the defendant from collecting an assessment for the construction of a sewer, and therein it is said:

"The appellants (defendants below) interposed a demurrer to the respondents' (plaintiffs below) complaint, upon the grounds (1) that there was a misjoinder of parties plaintiff, in that, to-wit, that there were numerous persons owning separate and distinct parcels of land, not similarly situated, nor similarly affected by the matter alleged in the complaint, and not having any unity of interest in the subject of the suit or the relief demanded, joined as plaintiffs; (2) that there was a defect of parties, in that, to-wit, there was no such unity of interest among the said plaintiffs in the subject of the suit, or the relief demanded therein, as entitled them to be so joined; (3) that said complaint did not state facts sufficient to constitute a cause of suit. The circuit court overruled the demurrer, and, the appellants failing to answer over, granted a decree for the relief prayed in the complaint.

"The demurrer to the complaint, 'for misjoinder of plaintiffs and defect of parties, did not specify the proper grounds of objection. Misjoinder of parties is no ground of objection by demurrer, and it did not appear from the face of the complaint that there was a defect of parties. The objection which the appellants' counsel aimed to raise was that several causes of suit had been improperly united. But I do not think a demurrer would lie upon that ground, if the ordinance levying the assessment was void. The

plaintiffs' interests were, it is true, distinct, and differed in extent, and very likely were not similarly affected; but the cause was common to them all, and their respective remedies for redress or prevention were the same. The case would be analogous to that of a nuisance affecting several owners of real property, where it is a common injury to them all, and they each have the same character of remedy to abate it. I think that, in all cases where parties are threatened with injury from one wrong, they have a sufficient community of interest to entitle them to unite as plaintiffs in a suit to prevent it, although their interests are distinct, and affected to a different extent. Such a rule should be maintained in order to prevent a multiplicity of suits, and is now, as shown by the authorities cited by the respondents' counsel, well established." See 39 Am. Jur. 898, Sec. 33.

In 3 Kinney on Irrigation and Water Rights (2d Ed.) 2979, Section 1631, it is said:

"Where the action is for an injunction simply, and the element of damages is not included, several owners who are in a similar situation may join together as parties plaintiff and maintain an injunction against the invasion of their rights. It is held that such parties have such a common interest as will 'justify them in uniting as joint plaintiffs in a suit to enjoin a continuation and repetition of such unlawful acts.' " (Citing, under reference note, *Frost v. Alturas, W. Co.,* 11 Ida. 294, 81 P. 996, Kinney on Irr., 1st Ed., Sec. 327; *Brown v. Farmers etc. Co.,* 26 Colo. 66, 56 P. 183; *Churchill v. Lauer,* 84 Cal. 233, 24 P. 107; *Ronnow v. Delmue,* 23 Nev. 29, 41 P. 1074; *Foreman v. Boyle,* 88 Cal. 290, 26 P. 94; *Blaisdell v. Stephens,* 14 Nev. 17, 33 Am. Rep. 523; *Beach v. Spokane, etc., Co.,* 25 Mont. 367, 65 P. 106; *Deseret etc. Co. v. McIntyre,* 16 Utah 398, 52 P. 628; *Barham v. Hostetter,* 67 Cal. 272, 7 P. 689; *Miller v. Highland D. Co.,* 87 Cal. 430, 25 P. 550, 22 Am. St. Rep. 254; *Schultz v. Winter,* 7 Nev. 130; *Montecito Valley W. Co. v. Santa Barbara,* 144 Cal. 578, 77 P. 1113; *Rickey v. Wood,* 152 Fed. Rep. 22, 81 C.C.A. 218; *Farmers' etc. Co. v. White,* 32 Colo. 114, 75 P. 415; *Rincon etc. Co. v. Anaheim etc. Co.,* 115 Fed. Rep. 543; *Kaukauna etc. Co. v. Green Bay etc. Co.,* 75 Wis. 385, 44 N.W. Rep. 638; *Grand Rapids etc. Co. v. Bensley,* 75 Wis. 399, 44 N.W.

Rep. 640; *Rodgers v. Pitt,* 89 Fed. Rep. 420, 129 Fed. Rep. 932; *Miller & Lux v. Rickey,* 127 Fed. Rep. 573.)

The case of *Frost v. Alturas Water Company,* 11 Ida. 294, 81 P. 996, shows that about twenty appropriators and users of the waters of Malad or Big Wood River commenced an action against about seven hundred other appropriators and users of the stream, setting up the respective rights and priorities of the plaintiffs, and alleging that the defendants were hindering and obstructing the plaintiffs in the exercise of their rights and several appropriations, and the wrongful and unlawful diversion by the defendants of the water of said stream to the damage, injury and prejudice of the rights of the plaintiffs and praying for a decree quieting the title of the respective parties to the waters of Malad River and its tributaries and decreeing the respective rights and priorities, and for an injunction restraining each from interfering with the respective rights of the others. Some of the defendants filed demurrers to the complaint upon various grounds. The one upon which the demurrer seems to have been sustained was a misjoinder of parties plaintiff and defendant. This demurrer was sustained by the court and judgment of dismissal of the action was thereupon entered.

In passing upon the questions involved, this court said:

"As far as we are able to gather from the brief, however, it would seem that the argument, when reduced to its conclusion, amounts to the contention that there has been a misjoinder of parties plaintiff and a misjoinder of parties defendant. This contention seems to be founded upon the proposition that it appears from the complaint that the plaintiffs own separate and distinct water rights, each in his separate and individual right, and that they own, occupy and irrigate separate and distinct tracts of parcels of land, each in his own individual right, and that there is no common right, interest or ownership in any particular or distinct tract of land or water right, and therefore no common interest which justifies a joinder of parties plaintiff. The same contention is made as to the parties defendant. It is admitted in this court and so appears from the complaint, that each individual owns his own distinct or separate tract of land and the water right appurtenant thereto. The question therefore arises: Have

the plaintiffs such common interest in the subject of the action and in obtaining the relief demanded as will justify them in joining as plaintiffs in this action? The same question arises as to the joinder of the defendants herein."

After further comment and citing a number of authorities, the court observes:

"An examination of the decisions of this court in irrigation cases for the last twenty-five years discloses the fact that the practice pursued by the plaintiffs in this case as to joinder of parties plaintiff and defendant has been uniformly followed and apparently recognized by the court as well as the members of the bar. And while the question here raised has never before been passed upon by this court, many cases open to the same objection as here urged have been from time to time before the court. This practice has become general and well recognized in this state in irrigation cases, although never before mooted in this court.

"* * * *

"The judgment will be reversed and the cause remanded, with directions to the trial court to overrule the demurrer, and proceed in accordance with the views herein expressed." (See, also, *Daniel Helphrey, et al, appellants, v. Joseph Perrault, et al, respondents,* 12 Ida. 451, 86 P. 417; *Morgan, et al, v. Udy,* 58 Ida. 670, 79 P. (2d) 295.)

Respondents' action was for injunctive relief and they did not seek damages.

We think there was no misjoinder of parties plaintiff, or that several causes of action were improperly united.

█ The appellants' second question is: "Second. Is it necessary to plead and prove adverse possession and prescription?"

In the case of *Woll v. Costella,* 59 Ida. 569, 85 P. (2d) 679, it is said:

"In a suit to quiet title it is not necessary for the complaint to divulge the chain of title, or to reveal the probative facts, an allegation in ordinary and concise terms of the ultimate fact that plaintiff is the owner of the property

being sufficient, without setting forth the probative facts, establishing the ultimate fact. (*Hammett v. Virginia Min. Co.*, 32 Ida. 245, 181 P. 336; *Ihly v. John Deere Plow Co.*, 35 Ida. 651, 208 P. 838; *Mascall v. Murray*, 76 Ore. 637, 149 P. 517.)"

In the case of *Hammitt v. Virginia Mining Company*, 32 Ida. 245, 181 P. 336, which was an action to quiet title to an undivided one-sixth interest in the property involved, this court said:

"That the court did not err in overruling the demurrer is apparent from the following rule, stated by the supreme court of the United States:

" 'An allegation, in ordinary and concise terms of the ultimate fact, that the plaintiff is the owner in fee, is sufficient, without setting out matters of evidence, or what have been sometimes called probative facts, which go to establish that ultimate fact; and an allegation that the defendant claims an adverse estate or interest is sufficient, without further defining it, to put him to a disclaimer, or to allegation and proof of the estate or interest which he claims, the nature of which must be known to him, and may not be known to the plaintiff.' " (See, also, *Ely v. New Mexico & Arizona R. R. Co.*, 129 U.S. 291, 9 Sup. Ct. 293, 32 L. ed. 683; *Pettengill v. Blackman*, 30 Ida. 241, 164 P. 358; *Fry v. Summers*, 4 Ida. 424, 39 P. 1118; *Union Mill & Mining Co. v. Warren*, 82 Fed. 519; *Stockton v. Oregon Short Line R. Co.*, 170 Fed. 627; *New Jersey & N. C. Land & Lumber Co., v. Gardner-Lacy Lumber Co.*, 178 Fed. 772, 102 C.C.A. 220; *Payne & Dewey v. Treadwell*, 16 Cal. 220; *Rough v. Simmons*, 65 Cal. 227, 3 P. 804; *Statham v. Dusy* (Cal.), 11 P. 606; *Heeser v. Miller*, 77 Cal. 193, 19 P. 375; *Davis v. Crump*, 162 Cal. 513, 123 P. 294; *Schlageter v. Gudee*, 30 Colo. 310, 70 P. 428; *Parker v. Conrad*, 74 Kan. 111, 85 P. 810.)

In 3 Kinney on Irrigation and Water Rights (2d Ed.), page 2796, Section 1552, under the subject "Pleadings" the author says:

"As the effect of a right acquired by prescription is to vest the title to the same in the claimant as completely as if it had been conveyed to him by the original owner, therefore, where a claimant relies on a title to the right by pre-

scription, upon principle, both the plaintiff and defendant should be permitted to prove their claim under a general allegation of ownership. This rule is followed in some jurisdictions, but in others it has been modified by statute and by court decisions. Upon this subject the general rule of law is that in a suit in equity to adjudicate and quiet the title to a water right or to an easement used in connection therewith, the plaintiff in his complaint or bill may prove his rights under the general allegation of ownership, as discussed in a previous section."

(See, also, *Cairns v. Haddock,* Cal. App., 212 P. 222.)

From the above authorities a general averment of adverse possession was sufficient.

■ The third question is: "Does the proof establish adverse possession and prescription?" We think it does. The Darby Dam Ditch was constructed in 1886 and was used as early as 1887. In 1898 it was extended, and has been used continuously since 1898 for the irrigation of what is now a portion of the Williams land. The branch ditch was taken from the Darby Dam Ditch in 1915 or 1916 and crossed the appellants' land and has been used continuously since said date for the irrigation of the lands now owned by the respondents, Williams and the Shaws. Appellants claim or assert no right, title or interest in the ditches constructed in 1898 and 1915 or 1916. Their claim of rights to the use of the Darby Dam Ditch was by permission from the manager of the Albion-Idaho Land Company and the trial court found that the Albion-Idaho Land Company had no right, title, claim or interest therein or in any of the ditches in controversy. Because the appellants, and their grantors and predecessors in interest, have no right or interest to the use of any of the ditches in controversy, it is needless to speculate as to whether there was or is an unused capacity therein.

In the case of *Taylor v. O'Connell,* 50 Ida. 259, 295 P. 247, involving the use of a ditch, it is said:

"The evidence is without conflict that the ditch was used by appellant uninterruptedly and continuously for more than the prescriptive period, which raises a presumption that such use was adverse and under claim of right (19 C.J. 959) ; and there is not sufficient evidence of parol

license to overcome this presumption or justify the above finding of the court (1 Jones' Commentaries on Evidence, 2d ed., sec. 41, note 11.)" See, also, *Bachman v. Reynolds Irr. Dist.*, 56 Ida. 507, 55 P. (2d) 1314; *Jones v. McIntire*, 60 Ida. 338, 91 P. (2d) 373; *Stickel v. Carter*, 63 Ida. 78, 117 P. (2d) 477.

■ The fourth and 'fifth questions seem to be joined, as follows:

"Fourth. Even if proven can the ownership of a ditch be so established? Or is the right limited to an easement?"

The findings show that the respondents "are the joint owners of the ditch in controversy" and that they "are now the owners of the right to the use of the same". It has been pointed out that the appellants and their grantors and predecessors in interest have no right, title or interest in or to any of the ditches involved. We fail to see what benefit it would be to appellants for the trial court to have pointed out with exact preciseness just what is meant by "owners" of a ditch right, or under what circumstances, if any, appellants might, at some future date, in the event they were thus disposed, establish or secure a right or interest in the ditches involved. In the case of *Mahaffey v. Carlson*, 29 Ida. 162, 228 P. 793, the court cites C.S., Sections 5653 and 5657 (now 41-1008 and 41-1104, Idaho Code Annotated), having to do with "The owners or constructors of ditches, canals, works or other aqueducts, or their successors in interest, using and employing the same to convey waters of any stream or spring, whether said ditches * * * be upon lands owned and claimed by them, or upon other lands," etc. The complaint in the instant case alleges that "plaintiffs now are the owners of the use and the right to the use of said water upon their said lands for the irrigation thereof and they, and their said grantors and predecessors in interest, have used the ditch * * * for transporting and conveying a portion of the water so decreed to them * * * to and upon said land for the irrigation thereof." The primary object and purpose of this action is to enjoin and restrain appellants from using the ditches for transporting and conveying water to their own lands or from cutting, obstructing or interfering with the use of the said ditches or diverting the water therefrom.

In the case of *Cairns v. Haddock*, supra, some attempt

is made in distinguishing rights to ditches. The plaintiff in that case alleged "that he 'is now, and for more than six years last past has been, the owner and in the actual possession of that certain water ditch * * *.' Under the liberal system of pleading which prevails in our practice, this general allegation of ownership was sufficient and warranted an effort to support it by showing a grant, an executed parol license, or title by prescription. Indeed, plaintiff might offer evidence of all these conditions and prevail if proof of any was satisfactory."

And further quoting, it is said:

"At the oral argument it was suggested by appellant that the complaint contemplated ownership in fee of the strip of land in controversy and the findings corresponded therewith, but that the evidence at most showed only an easement, and therefore a fatal variance occurred. In this appellant is in error. It is true that said allegation and findings are that plaintiff is the owner of the ditch, but it is clear that the word 'ditch' as there used means simply 'a right of way for the passage of water'. (*Smith v. Hampshire*, 4 Cal. App. 8, 87 P. 224; *Conover v. Atlantic City Sewerage Co.*, 70 N.J. Law, 315, 57 A. 897.) Indeed, the expression is qualified by the following phrase and 'of the right of way and site,' etc., so that there can be no doubt that only an easement was found to exist in favor of plaintiff.

"We feel satisfied that the decision of the lower court is just and legal, and the judgment is therefore affirmed."

In the case of *Smith v. Hampshire, et al,* supra, it is said:

"A ditch is no more than a right of way for the passage of water, and it was not essential that the use of the ditch, either by appellant or respondents, should be exclusive in order to confer the separate and distinct rights found and awarded by the court. This doctrine was announced by our Supreme Court in a well-considered case, where it was said: 'Neither was the word "exclusively" necessary to the answer. The ditch might have been used also as a waterway by plaintiff and others, and this would not prevent the use of the several defendants from ripening into a right by prescription, provided the latter use was in no way interfered with. Several parties could use and *require*

a permanent and several right to use the same for waste water, just as several persons could use and acquire a private road.' *Abbott v. Pond,* 142 Cal. 396, 76 P. 60, 61."

See, also, *Minto v. Salem Water, Light and Power Company* (Ore.), 250 P. 722.

The rights of respondents had ripened long before appellants commenced their interference with the ditches by cutting and turning the water out and diverting it to their own use for the irrigation of their own lands.

Appellants contend the court erred in admitting exhibit "A", which was a tracing from an aerial photograph.

The case of *Kleuschmidt v. Scribner,* 54 Ida. 185, 30 P. (2d) 362, and cases therein cited, disposes of such contention:

"Maps and charts are competent evidence to furnish a better understanding of the relative location of objects involved in the litigation and are received in the discretion of the trial court for the purpose of illustration and to aid the jury in that regard, and their admission in evidence will not be deemed erroneous in the absence of a showing of an abuse of the court's discretion. (10 Cal. Jur. 894, secs. 167, 168; 22 C.J. 910, sec. 1114; *Silvey v. Harm,* 120 Cal. App. 561, 8 P. (2d) 570; *Walling v. Van Pelt,* 132 Ore. 243, 285 P. 262; *Deitchler v. Ball,* 99 Wash. 483, 170 P. 123; *Ingersoll v. Olwell,* 127 Wash. 276, 220 P. 775; *Haven v. Snyder,* 93 Ind. App. 54, 176 N.E. 149; *Wiseman v. Terry,* 111 W. Va. 620, 163 S.E. 425; *Prok v. Norfolk & W. Ry. Co.,* 75 W. Va. 697, 84 S.E. 568.)"

There is ample proof to support the findings and the decree is in accord therewith. It follows that the judgment should be affirmed and it is so ordered. Costs awarded to respondents.

Budge and Givens, JJ., and Buckner, D.J., concur.

Ailshie, C.J., sat at the hearing but did not participate in the decision.

ON REHEARING
November 14, 1945.

MILLER, J.—Following the filing of the original opin-

ion herein, appellants filed a petition for rehearing. The petition for rehearing was granted and a rehearing had October 12, 1945. Since the rehearing this court has re-examined the questions presented on the original hearing and the questions presented by the petition for rehearing, but finds no reason for changing the views expressed in the original opinion.

Budge and Givens, JJ., and Koelsch and Buckner, DJJ., concur.

Ailshie, C.J., did not sit nor participate.