346 P.2d 1063

C. R. CROWLEY, INC., a corporation, Plaintiff-Respondent,

v.

Winston J. SOELBERG, Defendant-Appellant,

and

Charles P. Cope, Cross-Defendant and Respondent.

No. 8779.

Supreme Court of Idaho.

Nov. 23, 1959.

482

A. A. Merrill, Idaho Falls, for appellant.

W. K. Naylor, Idaho Falls, for respondents.

McQUADE, Justice.

This is an action for damages for breach of a written well-drilling contract. Charles P. Cope, cross-defendant and respondent herein, contracted to drill a serviceably straight 20-inch irrigation well on defendant Soelberg's property near Arco, Idaho. Under terms of the contract, the well was to be at least 200 feet deep, and drilling was to continue until either (1) sufficient water was obtained (2) Soelberg requested it be halted, or (3) a depth of 250 feet was reached. It was specifically provided the driller did not agree to find nor develop water. Contract price for the well was $14 per foot; payment of a note bearing eight per cent interest was to be secured by a crop mortgage.

The drilling contractor warranted the well would be "serviceably straight, round and aligned, and of full size, so as to allow the installation and operation of pumping equipment designed for a hole of that nominal diameter."

Work was undertaken pursuant to the contract. By a subsequent written instrument, Soelberg authorized the driller to continue beyond 250 feet. There is evidence to show the drilling continued to the 380 foot depth.

Soelberg allegedly paid no part of the contract price. The driller assigned his claim for the sum due on the contract to C. R. Crowley, Inc., a bonded collection agency. The agency then brought this action.

The complaint alleged the parties had executed the contract; the driller began the work and drilled a well of 20 inches diameter to a depth of 380 feet at the request of the purchaser; the defendant refused to execute the promissory note and the crop mortgage provided for in the contract; the plaintiff is assignee of Cope's claim; there is due thereon the sum of $5,320, to-

gether with interest; Soelberg had agreed to pay reasonable attorney fees for such a proceeding, and the sum of $600 is a reasonable fee to be allowed.

In an amended answer and cross-complaint, defendant Soelberg admitted plaintiff's corporate existence, the execution of the contract, and the commencement of drilling operations; he denied all other allegations of the complaint.

As an affirmative defense, Soelberg alleged the driller contracted to furnish all labor, tools and machinery and to carry out the work "diligently and in good workmanlike manner"; that the well was to be serviceably straight, round and aligned, and of full size to allow installation and operation of pumping equipment for a hole of that nominal diameter; the driller stopped work before the well was deep enough to furnish sufficient water for irrigation; he promised to return and finish drilling, but failed to do so, and as a consequence the defendant lost his entire crop.

By way of cross-complaint, the defendant set forth the following additional allegations: After Cope left the premises with his drilling rig, it was found the hole was so crooked it would not accommodate a 16-inch pump; relying upon completion of the well, the defendant had planted 160 acres of wheat and 60 acres of barley on the land to be irrigated; had the well been completed, he would have harvested crops having a net value of $9,968 after deduction of expenses.

Defendant prayed plaintiff take nothing by reason of its complaint, and the defendant have judgment of $9,968 against Cope as cross-defendant.

In the course of the trial, the court granted a motion for nonsuit as to the cross-complaint. The jury returned a verdict of $5,320 for the plaintiff against the defendant, upon which verdict judgment was granted. Defendant then moved for a new trial, supporting his motion by affidavits. This motion was denied. Defendant appeals from the judgment, from orders of the trial court denying his motions for nonsuit and for a directed verdict, and from denial of the motion for new trial.

Defendant-appellant sets forth numerous specifications of error, most of them directed toward the trial court's rulings on admission of testimony and exhibits. He further assigns as error denial of his motion for nonsuit to the complaint; granting of plaintiff's motion for nonsuit; denial of defendant's motion for judgment non obstante veredicto; denial of the motion for new trial; giving of an instruction as to liability based on the driller's compliance or non-compliance, and his readiness to comply, with the contract; and that the verdict was against the weight of the evidence in that there was no competent evidence supporting the amount awarded.

The evidence in this case—most of it going to the straightness, depth, and serviceability of the well—is in sharp conflict.

Cope testified the drillers struck water at 245 feet, and the water stood at 210 feet in the well. He said drilling continued to 380 feet. He testified he asked Soelberg to furnish 16-inch casing to use below the 250-foot level (the contract providing for a reduction in diameter of the well if this should become necessary) and this was refused. The witness said he then left the job. The well log showed drilling stopped at 380 feet. The witness also related because of lack of proper casing the lower portion of the well caved, filling it up to the 300 foot level.

The drilling contractor further testified a 14-inch pump had been contemplated when the contract was entered into, but the well would in fact accommodate a 16-inch pump.

A consulting engineer, R. T. Michener, testified he tested the well with a "cage"— a heavy ring slightly smaller than the diameter of the well, suspended over the center and lowered to measure deflections in the shaft. During the course of the test, the cage turned sideways and became jammed in the well. The engineer said in his opinion a 16-inch pump could be used in the area between 280 and 300 feet, and it would hang plumb and free. He explained the water level must be above the pump bowls, but generally the source is below them. The witness further testified it was customary in that area to drill a well of greater diameter than the pump contemplated, to allow for reductions.

Two other witnesses, a pump dealer and a well-drilling contractor, testified a 16-inch pump would operate satisfactorily. A driller employed by Cope testified he drilled the well 380 feet with a 20-inch bit.

A pump installer estimated the cage obstructing the well could be removed in an hour's time with proper tools, at a cost of about $50. Cope, on further examination and just before the closing of plaintiff's case, testified he had that day sent equipment to the Soelberg place to remove the obstruction.

Soelberg, testifying in his own behalf, said during the course of the drilling Cope wanted to reduce the diameter of the well and put in 16-inch casing, and the defendant refused to agree to this. Then, he said, the driller took out his equipment and did not return. The defendant said he measured the well, using a weighted length of twine, and found it was 300 feet deep. He said he also used a mirror to look down the shaft, and saw "several different crooks." Soelberg further testified a drawing made under his supervision showed the hole was "very irregular."

The trial court refused to permit the defendant to testify to damage to his crops, on the ground the driller had not guaranteed water, and further that such damages were remote and speculative.

Three farmers testifying for the defendant said the well was crooked.

The engineer Michener, testifying in rebuttal, said even though the well was not perfectly straight, a 14-inch pump could be installed by bending the column slightly, and this would not interfere with its operation.

Verl Andrew, a well-drilling contractor, said the view from the top of a well is often "deceiving." Sometimes, he testified, there will be large cracks and caverns gouged out at the sides, depending on the nature of the material being drilled, and these will make the hole appear crooked. He testified the well would take a 16-inch pump.

■■ These conflicts were for the jury to resolve. Where there is competent, substantial, though conflicting, evidence to support the findings of the trier of facts, these findings will not be disturbed on appeal.

■■ The trial court did not err in its refusal to admit evidence of damage to the defendant's crops. Prospective profits contemplated to be derived from a business which is not yet established, but one merely in contemplation, are too uncertain and speculative to form a basis for recovery.

Head v. Crone, 76 Idaho 196, 279 P.2d 1064. See also Faria v. Southwick, 81 Idaho 68, 337 P.2d 374. It follows that the motion for nonsuit was properly granted against the defendant.

■■ The appellant urges error of the trial court in refusing to admit an engineer's well alignment survey to illustrate defendant Soelberg's testimony, when the engineer who prepared the survey was not available to testify. Such evidence is admissible for the purpose of supplying a better understanding of the physical facts involved in litigation, and is received in the discretion of the trial court, to aid the jury. Williams v. Neddo, 66 Idaho 551, 163 P.2d 306; Hayward v. Yost, 72 Idaho 415, 242 P.2d 971. We find no abuse of discretion in the court's refusal to admit the exhibit, particularly in view of the voluminous testimony on this very point.

■■ Defendant's motion for nonsuit was based upon the fact no witness testified to the amount due under the contract. However, the contract itself was introduced in evidence, showing the well was to cost $14 a foot, and there was considerable testimony as to the depth of the well. Arriving at the contract price was a simple matter of arithmetical multiplication for the jury.

■■ Defendant maintains the trial court erred in instructing the jury it should determine whether the driller

 

"* * * substantially complied with, or was ready, willing, and able, within a reasonable time, to substantially comply with the terms of the written contract."

The following appears in 12 Am.Jur., Contracts, sec. 327, p. 882:

"* * * On principles of general justice, if the acts are to be done at the same time, neither party to such a contract can claim a fulfilment thereof, unless he has first performed *or is ready to perform* all the acts required on his own part." (Emphasis added.)

See also Hyde & Gleises v. Booraem & Co., 16 Pet. 169, 41 U.S. 169, 10 L.Ed 925; 4 Am.Jur., Assumpsit, sec. 45, p. 530.

Defendant's motion for new trial is based upon the removal, during trial, of the obstruction in the well and the consequent new opportunity to test the alignment of the hole. This motion was properly denied. The supporting affidavits disclose no new matter. Defendant had had the well tested for straightness before it was obstructed, and there was uncontroverted evidence the obstruction could have been removed at nominal cost. Additional evidence of alignment of the well would be merely cumulative.

"A new trial may be granted on the ground of newly discovered evidence only if such evidence is material to the issues, not merely cumulative or impeaching, will probably change the results if a new trial is granted, was discovered since the trial and could not have been discovered before the trial by due diligence." Fredricksen v. Luthy, 72 Idaho 164, 238 P.2d 430, 433.

We have examined the testimony of the witnesses, and the court's rulings during the course of the trial, and find no error.

The judgment is affirmed.

Costs to respondent.

PORTER, C. J., and SMITH and KNUDSON, JJ., and CARVER, District Judge, concur.