380 P.2d 898

Rich KNOBLOCK, Plaintiff-Appellant,

v.

Daniel ARENGUENA, Defendant-
Respondent.

No. 9185.

Supreme Court of Idaho.

April 19, 1963.

504

Gigray & Boyd, Caldwell, for appellant.

B. James Koehler, Jr., Parma, Smith & Miller, Caldwell, for respondent.

KNUDSON, Chief Justice.

This action was commenced by plaintiff-appellant, Rich Knoblock, to foreclose a lien

for labor and materials furnished in the drilling of a well upon land owned by defendant-respondent, Daniel Arenguena. The issues involve the terms and conditions of an oral agreement entered into by the parties on or about July 20, 1960, under which appellant agreed to drill a well upon land of respondent. Aside from the parties no witnesses were present to hear the discussion between the parties or the terms agreed upon.

Trial was had before the court, sitting without a jury, and from a judgment for respondent, this appeal is taken.

It is not disputed by either party that appellant was to drill the well and install ten inch casing for which he was to be paid at the rate of $9.50 per lineal foot.

Appellant testified that he drilled to a depth of 220 feet, and that following the completion of the drilling he test-pumped the well for which he was to receive additional compensation, and that there is due and owing him the sum of $2,119.18.

The area of dispute is whether appellant was required, under the terms of the agreement, to drill a hole sufficiently straight to accommodate the proper functioning of a turbine type pump with capacity to provide a flow of between 40 to 50 miner inches of water.

The first three assignments of error challenge the sufficiency of the evidence to support the following quoted findings of fact made by the trial court, to-wit:

"That the defendant was never able to straighten the well and that as a result the well was not such a well as would be drilled in a good and workmanlike manner so as to fulfill the purpose for which it was intended, it being intended that the well be used for irrigation purposes.

"That the plaintiff did not substantially complete his oral contract with the defendant to drill an irrigation well.

"That the plaintiff did not sustain the burden of proof."

The following quoted testimony of appellant is an acknowledgment on his part that the well as originally drilled was crooked:

"Q. Isn't it a fact Mr. Knoblock, that you told Mr. Reed that you admitted the well was crooked and that you would fix it?

"A. I told him that I knew it was crooked, sure, and I would attempt to straighten it up but that was to satisfy Mr. Arenguena but I still insisted all the way along putting in an oversized test pump would be a better indication of what was going to work than anything else.

"Q. You did for about two weeks try to straighten the well, is that right?

"A. Correct."

The evidence is conflicting as to whether the contract contemplated a straight well. Respondent insists that appellant guaranteed "a straight well." Appellant argues that it is virtually impossible to drill a perfectly straight well. Appellant is corroborated in this contention by qualified experts who testified that normally an irrigation well is neither plumb nor straight.

On the issue as to whether or not appellant was able to straighten the well, the record is clear that after some discussion between the parties appellant attempted to straighten it by drilling a 12 or 16 inch hole alongside the original casing to a depth of between 50 and 60 feet and moving the casing over somewhere between 10 and 12 inches. It is not clear to what extent, if any, such effort on the part of appellant accomplished correction.

Two witnesses besides respondent testified that from their observations made after appellant attempted to straighten the well, it still remained in about the same condition as when they first observed it. We therefore conclude that from the conflicting evidence the trial court was justified in finding as he did that appellant was never able to straighten the well.

By the remaining findings which are complained of, the court in effect found that appellant did not establish by a preponderance of the evidence that he substantially performed his oral contract with respondent by drilling a well in a good and workmanlike manner, so as to fulfill the purpose for which it was intended.

Under respondent's affirmative defense it is alleged that the well has not been completed. In this connection the court found that appellant "did not substantially complete his oral agreement" but did not specify in what respect appellant failed to complete the agreement. It is admitted that respondent told appellant he wanted a well that would produce from 40 to 50 inches of water, however, it is not contended that there was any expressed or even implied agreement on the part of appellant that the well would be a success as to quantity or quality of the water obtained. Respondent also alleged in his affirmative defense and strenuously contends that the well was drilled in such a manner that it is of no use or benefit whatsoever to him.

After appellant drilled to a depth of 220 feet, a test pump was installed by him and the evidence shows that between 40 and 50 miner inches of water was produced, although sand in varying amounts was present. After the test pump was removed five witnesses examined the well using lights, mirrors and some used a plumb-bob. Several of the witnesses testified that when using the light test, the light would go out of sight at a depth of approximately 90

feet. Those who used the plumb-bob testified that when they would hang the string over one side of the casing the plumb-bob would touch the other side at a depth of from 16½ to 18 feet. One of respondent's witnesses testified that he re-examined the well after appellant endeavored to straighten the casing and by using both mirror and light tests he was able to see water in approximately ½ of an inch of the outside arc of the well. The water level in the casing was at a depth of approximately 95 feet from the top.

The trial court found that the oral agreement between the parties provided that the well would be a serviceable irrigation well capable of producing 40 to 50 inches of water and capable of being used with a Parma Water Lifter Turbine pump. No error is assigned to such finding and we therefore assume that the parties concede that it is supported by competent evidence.

Forest L. Reed, assistant manager of the Parma Water Lifter Co., whom respondent had consulted relative to a pump for the well and who was the only expert witness who examined the well before and after appellant had attempted to straighten it, testified that in his opinion the well was not sufficiently straight to put a pump in and expect it to operate satisfactorily. Said witness examined the well after appellant's attempt to straighten it and the following quoted testimony discloses his opinion as to the condition of the well as it was left by appellant:

"Q. After you looked at the well that time, did you change your opinion Mr. Reed as to whether or not you could install a pump and expect it to operate satisfactorily in that well?

"A. I told both Rich and Danny that I could not put a pump in and guarantee it to operate.

"Q. And the reason for that was that you felt the well was still crooked?

"A. Still too crooked to put a pump in and expect it to maintain and operate for the years to come."

Appellant testified that well drilling had been his business or occupation for approximately twelve years and that he had drilled between 300 and 400 wells, 15 per cent of them being in Canyon County. Respondent testified that he knew appellant to be a well driller. Under these circumstances, appellant's undertaking to drill the well for him carried with it an implied obligation to do the work in a good and workmanlike manner.

A general statement as to one's duty to exercise care in the performance of an express or implied contract is found in 38 Am.Jur. 662, § 20 as follows:

"Accompanying every contract is a common-law duty to perform with care,

skill, reasonable expedience, and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort, as well as a breach of the contract."

■ In Davis v. Merrick, 66 N.M. 226, 345 P.2d 1042, the Court stated the following quoted principle which we think is applicable to the facts in this case:

"In a contract for drilling a water well, there is no implied undertaking that water will be obtained or that the well will be a success as to the quantity or quality of the water obtained, but only that the work shall be done in a workmanlike manner with the ordinary skill of those who undertake such work."

See also Roscoe Moss Co. v. Jenkins, 55 Cal.App.2d 369, 130 P.2d 477; Butler v. Davis, 119 Wis. 166, 96 N.W. 561.

During rebuttal, appellant called as his witnesses (1) Mr. Doty, a well driller who has drilled approximately 800 wells in the last 16 years, and (2) Mr. Wood, who has had long experience as a dealer in irrigation and domestic well pumps. Neither of these witnesses had seen the well in controversy. Each one expressed the opinion that a pump may function satisfactorily even though the well is not plumb, however, it is not satisfactory if the well is so crooked that the pump is in a bind when installed. These witnesses expressed the opinion that

if it is necessary, during the installation of the pump, to lift it up and drop it in order to get it down the hole, a bind in the pump would be indicated.

The testimony is conflicting as to whether appellant experienced trouble in lowering the test pump into the well and also the effort required to force the pump into position.

The disinterested witnesses called who had experience in drilling wells or installing pumps and by their experience were qualified to express an opinion as to whether a well is sufficiently straight to accommodate the proper functioning of a turbine type pump testified in substance that a proper test is made by installing a pump of proper size and if it does not bind in the casing it would be expected to operate properly.

In this case no attempt was made so to test the well after appellant had finished his work. In this connection the following are quoted remarks of the court immediately following the introduction of evidence:

"The thing that strikes me in this case is that nobody has taken the trouble to put a pump in there they contemplated using and find out whether it is a workable hole or not.

"Why didn't somebody try it and see whether the pump would bind in there."

The material and controlling issue in this case is whether or not the appellant sub-

stantially complied with the terms of the contract. The evidence introduced was very conflicting and these conflicts were for the trial court to resolve.

After a careful review of the record we conclude that the findings of fact and conclusions of law are supported by substantial, competent evidence. Where there is competent, substantial, though conflicting evidence to support the findings of the trier of facts, such findings will not be disturbed on appeal. C. R. Crowley, Inc. v. Soelberg, 81 Idaho 480, 346 P.2d 1063.

The record discloses that appellant furnished the casing installed in the well and although we have concluded that appellant cannot enforce his claim of lien, equity dictates that he should be entitled to remove, if he chooses, all well casing that he furnished and installed in the well in controversy. Accordingly it is hereby ordered that appellant shall have ninety days from the date upon which the remittitur in this action is filed in the district court, within which to remove such well casing. In all other respects, the judgment is affirmed.

No costs allowed.

McQUADE, McFADDEN, TAYLOR and SMITH, JJ., concur.