410 P.2d 962

Owen DURFEE and Melvin Durfee, Plaintiffs-Respondents,

v.

Delbert S. PARKER and Mildred Parker, his wife, Defendants-Appellants.

No. 9705.

Supreme Court of Idaho.

Dec. 14, 1965.

R. M. Whittier and L. Kim McDonald, Pocatello, for appellants.

F. M. Bistline, Pocatello, for respondents.

KNUDSON, Justice.

This action was commenced by plaintiffs-respondents to foreclose a lien for work and materials filed pursuant to I.C. Title 45 Ch. 5. Defendants-appellants filed their counterclaim seeking to recover, by reason of alleged breach of warranty, monies advanced to plaintiffs in the sum of $150.00.

It is undisputed that plaintiffs and defendants entered into an agreement whereby plaintiffs agreed to drill an 8-inch well on defendants' property at a place designated by them, for which plaintiffs were to be paid at the rate of $6.50 per foot for drilling and $2.50 per foot for casing; that plaintiffs commenced drilling on about April 14, 1964 and continued until May 22, 1964, at which time the well had been drilled to a depth of 270 feet. When the well had been drilled to a depth of about 30 feet defendants paid plaintiffs $150.00 to apply on the contract.

From a judgment entered in favor of plaintiffs foreclosing a lien in the amount of $2,280.00 and interest, together with the additional sum of $1.50 for recording fee and $600.00 attorney's fee, this appeal is taken. Appellants' principal contention is that the trial court erred in finding "that plaintiffs fully complied with the agreement between the parties and performed the same in a workmanlike manner."

Appellants concede that respondents did not expressly or impliedly agree that water would be obtained as a result of the drilling undertaken pursuant to the agreement entered into. However, appellants do contend that respondents did, at least impliedly, warrant that the work would be done in a good and workmanlike manner. We agree with the viewpoint expressed by appellants on each of said positions. In this connection attention is called to the following stated principal which has been approved by this court, to-wit:

> "'In a contract for drilling a water well, there is no implied undertaking that water will be obtained or that the well will be a success as to the quantity or quality of the water obtained, but only that the work shall be done in a workmanlike manner with the ordinary · skill of those who undertake such work.'" See Knoblock v. Arenguena, 85 Idaho 503, 380 P.2d 898.

Appellants contend that respondents failed to perform their work in a workmanlike manner, in two respects: (1) the casing was broken, and (2) the well shaft deviated from its vertical course. Much conflicting testimony was introduced regarding each of these issues.

In support of their contention that the well hole deviated from a straight course, appellants point to the testimony of Paul

Vollmer, who testified that he took a mirror and reflected the sunlight into the hole and discerned that the hole disappeared at about the 100-foot level. Appellants' witness Kendall testified that he performed a like test with the same result. Neither of these witnesses performed any other test in an attempt to determine if a variation existed or the extent of it.

Respondents introduced evidence to the effect that a deviation of 4 inches within a distance of 100 feet is recognized to be standard tolerance in an 8-inch well; that they made visual tests with mirrors and could see water in the well hole at a distance of 150 feet from the surface; that they also pursued the standard government practice in their endeavor to determine the extent of deviation and found that it was within the recognized tolerance.

In support of their contention that the well casing was broken, appellants' witness Paul Vollmer, Sr., testified that he observed a break in the casing at a depth of 50 feet and he estimated that it would cost $250.00 to repair it. Appellants' witness Paul Vollmer, Jr. stated that he observed a slight offset in the casing at a depth of approximately 50 feet but he did not make a particular test to determine the cause or extent of such offset and did not definitely know if there was a break in the casing.

Respondents denied that there was a break or offset in the casing and testified that throughout the drilling operation both the drill and the bailer moved freely up and down in the casing without any indication of sticking or catching.

Appellants also argue that because of the break in the casing the well water would become contaminated and unusable for culinary purposes. In defendants' Exhibit I, issued by the Idaho Department of Health, which sets forth recommended standards for individual water supply systems it is stated that "the well should have a watertight casing to a point at least 10 feet below the natural ground surface and to greater depths if necessary to exclude surface water or undesirable ground water." Appellants have not made nor caused to be made any test to determine the purity of the water available from this well. There is no evidence that the water available from this well, regardless of its source, is impure or contaminated. There is no proof whatever that the water entering at the 50 foot level, if any was entering, was surface water and there was no showing that water which is found at a depth of 50 feet is impure.

Appellants strenuously argue that the court erred in finding that the entire tract of land described in the claim of lien herein sought to be foreclosed and upon which the well is located, consisting of approximately ten acres more or less, was required for the convenient use and occupation of the

well involved and subject to the lien. This contention involves the application of I.C. § 45–505, which provides:

"The land upon which any building, improvement or structure is constructed, together with a convenient space about the same, or so much as may be required for the convenient use and occupation thereof, to be determined by the court on rendering judgment, is also subject to the lien, if, at the commencement of the work or of the furnishing of the material for the same, the land belonged to the person who caused said building, improvement or structure to be constructed, altered or repaired, but if such person owns less than a fee simple estate in such land, then only his interest therein is subject to such lien."

It is not contended that a water well is not an improvement or structure within the meaning of this statute. The finding complained of is as follows:

"V.

"That it was the intent and purpose of the defendants to use the water from said well to irrigate the entire tract of land described in the claim of lien hereinabove referred to and hereinafter described and for domestic purposes in a dwelling which they proposed to erect on said premises, and that the whole of said tract of land was required for the convenient use and occupation of said well on which the materials furnished plaintiffs were used and their labor rendered."

■ We adhere to the requirement that the finding of the court regarding the area determined to be required must be sustained by competent evidence. Nevertheless we are convinced that this statute lodges with the trial court a wide discretion in determining the extent of such area. This court has held repeatedly that the provisions of our lien laws must be liberally construed with a view to effecting their purposes. Dybvig v. Willis, 59 Idaho 160, 82 P.2d 95.

■ What area of land is subject to the lien in a given case largely depends upon the character of the improvement. In determining what would be a convenient space for the use and occupation of a water well, consideration should be given to the reasonable and beneficial use of the waters of the well. The question is not so much as to the amount of land required ·for the area to be occupied by the well and its appliances, but rather as to the amount of land to be improved and benefited by the creation and use of the well. Dysart v. Youngblood (1940), 44 N.M. 351, 102 P.2d 664; Anselmo et al. v. Sebastiani (1933), 219 Cal. 292, 26 P.2d 1; Western Well Works, Inc. v. California Farms Co. (1923), 60 Cal.App. 749, 214 P. 491.

■ Appellants' testimony that they intended to use the well water only for culinary purposes is also contradicted. Respondents testified that on several occasions Mr. Parker (appellant) stated to them that he intended to use the well for irrigation as well as domestic purposes. It was the province of the court as trier of the facts to determine what use appellant intended to make of the well.

Appellants contend that they do not have a usable well by reason of the claimed defects hereinbefore discussed, yet they have made no tests regarding the amount of water available from the well or its purity, nor have they made any attempt to install any kind of a pump to any depth with a view of determining if a pump would function in the casing as it existed.

■ The evidence in connection with each of appellants' contentions is conflicting and these conflicts are for the trial court to resolve. We have consistently held that where there is competent substantial though conflicting evidence to support the findings of the trier of facts, such findings will not be disturbed on appeal. Knoblock v. Arenguena, supra; C. R. Crowley, Inc. v. Soelberg, 81 Idaho 480, 346 P. 2d 1063.

■ When the facts and circumstances disclosed by this record are carefully considered, we find there was sufficient competent evidence to support the findings of the court. Judgment affirmed.

Costs to respondents.

McQUADE, C. J., and McFADDEN, TAYLOR and SMITH, JJ., concur.