337 P.2d 374

Frank FARIA and Geneva O. Faria, hus-
band and wife, Plaintiffs-Appellants,

v.

C. D. SOUTHWICK and Arthur J. South-
wick, Defendants-Respondents.

No. 8671.

Supreme Court of Idaho.

March 24, 1959.

Rehearing Denied April 14, 1959.

Perce Hall, Mountain Home, for appel-
lants.

Francis H. Hicks, Mountain Home, E. G. Elliott, Boise, for respondents.

McQUADE, Justice.

Plaintiffs commenced this action to recover from defendants damages for violations of a farm lease. Defendants filed an answer to plaintiffs' complaint, and by cross-complaint sought damages which defendants contend they sustained by reason of plaintiffs' allegedly fraudulent representations in procuring the lease.

Plaintiffs, on March 1, 1954, leased in writing to defendants three tracts of land. Defendants went into possession of the property on the day the lease was executed. Plaintiffs complain that defendants failed, neglected, and refused to comply with the terms of the lease for the year 1954 as follows: a. That upon 110 acres of tract no. 1 defendants failed to plant any of the crops agreed; that they failed to plant 35 acres in clover as agreed, but planted 17 acres of corn which was not watered sufficiently to mature the crop; that on 75 acres no crop was grown, and according to the crops to be grown on such area, the share plaintiffs would have received had a

value of $3,860.41; b. That tract no. 2, consisting of 100 acres, was not planted and should have yielded a share to plaintiffs in the amount of $2,666.66; c. That upon tract no. 3 defendants failed to irrigate 35 acres of oats which should have yielded plaintiffs a share in the sum of $583 plus one-half the cost of the seed of $96; that defendants failed to plant early enough, and later to irrigate, 25 acres of corn which should have netted plaintiffs $1,250 if the land had been planted in potatoes and cared for properly, all according to the lease; d. That defendants allowed the premises to become overrun with weeds, which cost plaintiffs $240 to eradicate; e. That other damage to the property was in the sum of $164.

Defendant C. D. Southwick went into possession about December 1, 1953, and Arthur J. Southwick went into possession on March 15, 1954. The defendants made proof under the cross-complaint that C. D. Southwick's entry onto the premises about December 1, 1953, was pursuant to an oral agreement, and that the written lease was entered into April 14, 1954, and at that time and prior thereto plaintiffs made the following false statements and representations to the defendants and each of them: 1. That of the 900 acres, there were 400 acres ready for cultivation that were irrigable and tillable, fertile and productive; 2. That the ground tested 100 per cent fertility and germination; 3. That the ground

had produced 75 to 100 bushels of grain per acre (tract no. 1, 50 to 60 bushels); 4. That the ground would grow 25 to 30 tons of sugar beets per acre; 5. That the ground would be leveled and prepared for irrigation for the 1954 growing season; 6. That plaintiffs would build a barn, farm shop, and suitable grain storage; 7. That plaintiffs were to build two houses for defendants and repair the roof on the small building then on the property. Defendants also alleged and proved that the land was arid desert land that contained alkali and salts which rendered the land incapable of producing good and marketable crops. Because of these alleged false and fraudulent representations, the defendants obtained a verdict on the cross-complaint and judgment for actual damages in the sum of $5,000.

Frank Faria was not an experienced farmer, and had to rely upon others to acquaint him with farming methods, fertility of soil and other information necessary to agricultural operations.

Before C. D. Southwick moved onto the premises he had been informed by Frank Faria that sulphuric acid was being applied to the land to counteract the alkaline condition of the soil. During the fore part of November, 1953, C. D. Southwick used a sprinkling system to apply the sulphuric acid as well as to water generally those new areas which were to be planted.

Carl Agenbroad, a neighbor who had extensive experience with 3,000 acres in the same area and was personally acquainted with the plaintiffs' land, testified that the farm generally contained new land which had not been cultivated, leveled, ditched, or cleared. To prepare this land for profitable cultivation, the evidence shows that the farm would have to be cleared, leveled, ditched, and farmed. This latter would require about 10 years of planned cultivation and the washing of alkali from the soil. To perform all of the requisite labor and furnish the machinery and supplies would require great sums of money which neither of the parties possessed. It was impossible for defendants under the terms of the lease to fulfill their covenants, and likewise it was impossible for plaintiffs to perform their covenants. As a result of financial strain, defendants went about the neighborhood doing custom work for hire, which plaintiffs complain resulted in inadequate irrigation of the crops planted.

Agenbroad testified that the Farias had a very poor farm, and at most only 80 of the 900 acres were capable of cultivation in 1954. He testified that a maximum of 30 acres in tract no. 1 could be cultivated to alfalfa, clover, or barley, and the balance of this land was alkaline, boggy, or not irrigable.

According to the lease, a portion of this tract was to be irrigated with defendants' sprinkler system. The lease also called for the land to be planted to alfalfa, oats, clover, and grain.

The witness Agenbroad further testified not more than 40 acres of tract no. 2 could be farmed if water were available. According to the terms of the lease, plaintiffs were to construct ditches and level the land, and have 175 acres of the same ready by May 1, 1954, for the planting of beans. The work to be performed by plaintiffs was not done in accordance with the lease.

Agenbroad also testified that of tract no. 3 there were 10 acres of farmable land which could be used for the raising of hay, and that the balance of the land in this tract was alkaline and would not grow a paying crop. The lease required defendants to plant hay, oats, and 25 acres of potatoes on a portion of this tract.

There was some testimony concerning ill feelings between the witness Agenbroad and plaintiff Frank Faria. However, the witness was not impeached in any way. Both the parties hereto testified they were not qualified in farming practices on this type of land; Frank Faria testified he was not a farmer, thereby not being acquainted with quality of land or farming practices; the Southwicks testified they were not acquainted with alkali nor its effect on land and crops, nor were they

acquainted with the fertility of this particular land. Therefore, the testimony of Agenbroad was of authoritative character, to be considered on the question of the productivity of the land, because he had lived in this area for a period of six years, farming large areas of land, and was familiar with plaintiffs' land by being acquainted with the practices necessary to bring new land into profitable cultivation.

Appellants' first assignment of error is:

"The Court erred in entering judgment upon the verdict and in denying plaintiffs' motion for new trial because the evidence fails to show that the claimed representations of the plaintiff Frank Faria were made with the intent to deceive."

Neither of the parties hereto possessed knowledge as to the fertility of the soil and how much of the land could be farmed. In addition to the evidence showing lack of deception on the part of plaintiff Frank Faria, it also shows that defendant Southwick assumed the land to be fertile and productive. In the case of Hammaker v. Schleigh, 157 Md. 652, 147 A. 790, 794, 65 A.L.R. 1285, that court succinctly stated the applicable rule:

"* * * Where parties enter into a contract upon the common assumption that a particular and essential state of things exists with reference to a substantial subject-matter, the nonexistence of that state of things, through default of neither party, ends the liability and prevents the accrual of a duty dependent upon it. * * *"

Restatement of Contracts, volume 2, p. 847, states that with certain exceptions not applicable here

"* * * a promise imposes no duty if performance of the promise is impossible because of facts existing when the promise is made of which the promisor neither knows nor has reason to know."

See also 12 Am.Jur., Contracts, sec. 131, p. 622.

In addition to the assumption that the land was fertile, the parties proceeded to draw up a lease for the planting of crops, part of which, according to the qualified witness Agenbroad, could not be raised upon the land, thereby making the performance of that portion of the lease impossible.

"Where parties make an agreement and are ignorant at the time that performance of the contract is impossible, there is no contract, if it appears on the construction of the agreement that it was intended to be conditional on the supposed possibility of performance. * * *" 17 C.J.S. Contracts § 462, p. 952.

■ Plaintiffs assert further error of the trial court in entering judgment on the verdict and in denying plaintiffs' motion for new trial because the claimed representations of fraud were not statements concerning past or existing facts but were merely statements of opinion, hope, or expectation.

"The question whether fraud may be based on false statements as to future profits and income may be influenced to a considerable extent by the present degree of certainty or uncertainty as to what the future will bring.

"Where the subject of the sale is a new business, so that there are few existing facts concerning its profits or prospects, the future is unusually speculative and it may well be held that representations concerning future profits involve too much guesswork to constitute actionable fraud, even in jurisdictions where a false opinion or false promise may constitute actionable fraud." 27 A.L.R.2d 14, annotation, False representations as to income, profits, or productivity of property as fraud, pp. 71–72.

See also Nelson v. Hoff, 70 Idaho 354, 218 P.2d 345.

"The above evidence with regard to loss of profits is insufficient to sustain the judgment in this regard. * * *" O'Brien v. Best, 68 Idaho 348, 194 P. 2d 608, 615.

"Prospective profits contemplated to be derived from a business which is not yet established but one merely in contemplation are too uncertain and speculative to form a basis for recovery. * * *" Head v. Crone, 76 Idaho 196, 279 P.2d 1064, 1066.

■ There was no proof on the part of defendants to sustain the judgment for failure to build two houses, farm shop, grain storage, barn, use of pasture ground, and repair of a building.

Because the contract upon which the parties rely was incapable of being performed through lack of knowledge of the parties, there is no foundation for the complaint nor for the cross-complaint. The judgment is reversed, and the trial court is directed to dismiss the complaint and the cross-complaint.

Costs to appellants.

PORTER, C. J., and TAYLOR and SMITH, JJ., concur.

KEETON, C. J., concurred in the conclusion reached in this opinion prior to his retirement.