372 P.2d 414

H. W. DAWSON, doing business as Nampa
Lumber Co., Plaintiff and Appellant,

v.

Russell W. ELDREDGE and Erma Eldredge,
husband and wife, Defendants
and Respondents.

No. 9015.

Supreme Court of Idaho.

June 15, 1962.

Earl E. Reed, Nampa, for appellant.

Davison, Davison & Copple, Boise, for respondents.

McFADDEN, Justice.

Appellant Dawson instituted this action to foreclose a claim of materialman's lien on real property of respondent Eldredge and wife. In his complaint, Dawson claims $5,100.81 as the balance due for goods sold and services rendered in erection of a residence for the Eldredges, and claims reasonable attorneys fees in foreclosing the lien. He prayed for foreclosure of the lien on the property and for its sale.

The Eldredges, by their answer, admitted the furnishing of materials and services, claiming, however, that they were not furnished under an open account, but pursuant to an oral agreement of the parties by which appellant agreed to construct the residence for $14,000. They denied any balance was due except $415.00 still on deposit with the Home Savings and Loan Association. They also cross-claimed for breach of the oral agreement, alleging that Dawson had failed to construct the dwelling in accordance with the agreement, and seeking damages in the amount of $5,000. Dawson answered the cross-claim, denying any oral agreement and further claiming that the Eldredges paid moneys to persons other than himself and that the Eldredges had made changes and increases in the dwelling, which were improperly charged against the funds held by the Loan Association, to be used in construction of the dwelling.

The court submitted to the jury the issues raised by the Eldredges' cross-claim—i. e., whether there was a contract between the parties; if so, whether any failure on Daw-

son's part in carrying out his obligations under the contract caused any damages; and the amount of any such damages. At the trial of the action the court reserved to itself those issues pertaining to the balance, if any, due Dawson, and whether such balance was secured by the claim of lien.

The jury returned a verdict in favor of the Eldredges fixing their damages at $1,-000.00. The trial court entered judgment on this verdict without consideration of whether any balance remained due to Dawson, or whether such balance was secured by a lien. The trial court later set aside this judgment, entered findings of fact, conclusions of law, and a decree, wherein the court determined there was a contract between the parties to construct the dwelling for $14,000, and that there was some $1,-939.49 still due Dawson for materials furnished, offset in part by the sum of $1,000.00 damages. Decree was entered for Dawson for $989.49, but it was held Dawson had waived any lien rights securing such balance.

Dawson moved for a new trial on the grounds that the jury had failed to return a true verdict, that the verdict was contrary to the facts and law. This motion was denied; whereupon this appeal was taken from the judgment and order denying the motion for new trial.

Error is directed to the Court's finding that there was an agreement between Dawson and the Eldredges to construct the residence for $14,000.00. Briefly, appellant's version of the transaction, as shown by his testimony, was that early in 1958 the Eldredges consulted him about construction of a dwelling. They had with them plans previously prepared by an architect, but it was determined that construction of a dwelling based on those plans was beyond their means. Scaled-down plans were agreed upon, and Dawson submitted an estimate of $15,700 for the cost of constructing the smaller version of the dwelling. Dawson would supply the materials, and the Eldredges would employ any person they desired to construct the dwelling, with Dawson helping in any way possible. The Eldredges, being unable to obtain financing, Mr. Dawson undertook on their behalf, to arrange for funds. He negotiated for Eldredges a first mortgage loan with the Home Federal Savings and Loan Association of Nampa, in the amount of $12,000.00, which Dawson, at all times recognized as superior to any claim of lien which he might assert. The Eldredges deposited $2,000.00 with the Association, making a total of $14,-000.00 available for construction. In order to make up the difference between the cost as estimated by Dawson and the $14,000 available, the Eldredges agreed to do their own painting, plumbing and electrical wiring, under the guidance of Dawson. Mr. Dawson testified that after the smaller version of the plans had been settled, the Eldredges made other changes in the plans,

increasing the costs. He claimed that his only obligation was to furnish materials, not to complete the home at any fixed price.

While the evidence, as submitted by the Eldredges, shows a different version of the transaction, yet certain items are without dispute, including the fact that they were to do the painting and certain parts of the plumbing and electrical work. They also agreed that the roofing material to be used was changed to a higher grade. The area of direct conflict is concerned primarily with whether there was an oral agreement. The Eldredges' testimony is to the effect that when they brought their original plans to Dawson, it became clear that these plans involved construction beyond their means; that the dimensions of the structure were reduced, with a new floor plan being prepared by Mr. Dawson and themselves. Other changes were made in the plans to reduce the costs. Mr. Dawson was quoted as stating he had a man who could do plumbing and electrical work, but who wasn't licensed, that if the Eldredges would help with the work, the plumbing and electrical work could be done in that manner, and that such plan was agreed upon. The Eldredges were unwilling to pay the $15,700.00 figure first quoted, and discussions were had to reduce the plans, culminating in Mr. Dawson and Mr. Eldredge again reducing the final floor plan. After still further discussions, the last plans were somewhat enlarged, and "Mr. Dawson said he could build it for $14,000.00 and he would secure the loan for us". Mr. Dawson arranged for the loan, the $2,000.00 was deposited, and the $14,000.00 was made available and work started on the dwelling.

Review of the record indicates substantial, although conflicting, evidence on the question whether there was an oral contract for the construction of the building, or whether it was an arrangement whereby Dawson was merely to furnish materials. Under such circumstances, the finding of the court that there was a contract to build for a sum certain cannot be disturbed on appeal. Williams v. Idaho Potato Starch Co., 73 Idaho 13, 245 P.2d 1045; Lanning v. Sprague, 71 Idaho 138, 227 P.2d 347.

Under the court's instructions, in order for the jury to assess any damages against Dawson it was necessary for them first to determine whether there was a contract. The jury's verdict being for the Eldredges, it is thus inherent in such determination that they first found a contract between these parties. The same rule applicable to the court's findings on substantial, although conflicting, evidence is applicable to findings by the jury. The finding of a contract, inherent in the jury's verdict, likewise, cannot be disturbed on appeal. C. R. Crowley, Inc. v. Soelberg, 81 Idaho 480, 346 P.2d 1063; Seamons v. Spackman, 81 Idaho 361, 341 P.2d 442.

Appellant assigns error in the finding of the court that Dawson had waived

his lien rights, and in its determination that he was not entitled to a lien, nor to attorney's fees. Entitlement to attorney's fees is incident to foreclosure of the lien. Willes v. Palmer, 78 Idaho 104, 298 P.2d 972. Thus, if Dawson was not entitled to foreclosure of a lien, he was not entitled to award of attorney's fees.

Dawson in arranging for the loan by the Savings Association executed the following:

"TO: Home Federal Savings and Loan Association, Nampa, Idaho

"For and in consideration of your making a loan of $12,000.00 to Russell W. Eldredge and Erma Eldredge, husband and wife of 924 12th Ave. Road, Nampa, Idaho, proceeds of which will be used in the construction by him of a dwelling on his property located at Route 4, Nampa, Idaho, we do hereby guarantee the completion of the proposed dwelling in a good workmanship manner, free of all liens of any type what-so-ever, including liens for materials and labor, irrespective of whom furnishes such materials or performs such labor.

"NAMPA LUMBER COMPANY

"—By H. W. Dawson,

"Owner."

Respondents contend that this was a complete waiver of all lien rights by the appellant, and the court so found. Appellant, however, urges that this instrument was only between the mortgage holder and himself and did not waive any of his rights, asserting that there being no consideration from respondents to appellant for this waiver, it was ineffective to waive any of his statutory rights to a lien against this property.

Mr. Dawson testified that the association would not make the loan unless this agreement was signed by him. The consideration for this instrument was the granting of the loan by the association to the Eldredges. The benefit to Dawson in having this money available to the Eldredges for construction of the dwelling is sufficient consideration to uphold his agreement. 12 Am.Jur. 570, Contracts § 79. The terms of the agreement guaranteed completion of the *"dwelling * * * free of all liens of any type what-so-ever, including liens for materials and labor, irrespective of whom furnishes such materials or performs such labor."* The agreement was to the association, however, not to the Eldredges; it was not expressed as a waiver of any lien rights, but simply a guarantee to the loan association for completion of the dwelling and against any liens attaching. Inasmuch as the Eldredges were not parties to the agreement, the only way its terms could be extended to them would be to consider them as "third party beneficiaries." From the terms of the agreement, and the circumstances surrounding its execution, it is self-evident that

it was executed for the benefit of the association to assure to them that Dawson would complete the dwelling and protect the association and its mortgage lien from claims of materialmen and mechanics, and not for the benefit of the Eldredges.

■■ The reasoning and statements set out in Sachs v. Ohio Nat. Life Ins. Co., (C.C.A.7th) 148 F.2d 128, 158 A.L.R. 688, are appropriate here. Dealing with the question of third party beneficiary agreements, it was stated:

"This court, in Vilter Mfg. Co. v. Loring, 7 Cir., 136 F.2d 466, considered the right of a third party beneficiary to recover, and after an analysis of the Illinois cases, on page 468 stated: 'One may be a direct beneficiary under a contract of guaranty, or he may be a mere incidental beneficiary. If he belongs to the former class he may recover, but if to the latter he may not. (Citing cases.) From these decisions we think it is clear that one claiming as a beneficiary may not recover under such a contract unless it may be concluded from the instrument that the parties thereto regarded him as a person primarily interested and that they desired and intended to secure to him personally the benefits of its provisions.'

"It has been held in numerous other cases that incidental benefits to third persons resulting from a contract to which they are not parties are insufficient to permit such third parties to sue on the contract. (citing cases.)

"Thus, before recovery can be had by a third party beneficiary, it must be shown that the contract was made for his direct benefit, or as sometimes stated primarily for his benefit, and that it is not sufficient that he be a mere incidental beneficiary. Furthermore, such a contract must be strictly construed in favor of the person against whom such liability is asserted."

See also: I.C. § 29–102, identical with Cal.Civil Code, § 1559; 12 Cal.Jur.2d 500, Contracts § 268; 2 Williston on Contracts, 3rd Ed. § 356, 402, 403; W. D. Anderson & Sons v. Samedan Oil Corp., 5 Cir. 1954, 210 F.2d 600; 12 Am.Jur. 834, Contracts § 262; Restatement, Contracts, § 147; 17 C.J.S. Contracts § 519, p. 1127.

■ While the loan made by the association was for the benefit of the Eldredges, they receiving the proceeds thereof, the promise by Dawson to the association to complete the dwelling free of all liens was solely for the benefit of the association, to assure the improvements on the property would be made, thereby providing security for the loan. The court erred in its determination that Dawson waived his rights to claim of lien, as against the Eldredges.

■ Appellant contends that the trial court erred in failing to instruct the jury that by finding any item for the Eldredges, they in effect barred the Court from finding any damages for the appellant Dawson. However, the court instructed the jury as follows:

"* * * you are not to concern yourself in your deliberation with plaintiff's claim against the defendants for materials furnished or labor performed. Neither are you to concern yourselves as to whether or not plaintiff is entitled to a lien on defendants property for the furnishing of said materials and labor. These are matters solely for the Court to determine."

The Court then advised the jury that they were to determine four matters: (1) whether there was a contract between the parties for construction of the residence; (2) if a contract was found, whether the residence was constructed in a good and workmanlike manner; (3) if they found a contract and failure to comply with the obligation to construct the residence in a good and workmanlike manner, the amount of damages; and (4) if they found no contract, they were to find for the plaintiff.

Here the jury was fully instructed as to the issues to be resolved by them. Even though a judgment was entered on the verdict in favor of the defendants, the trial court, after this error was brought to its attention, corrected it and made findings on the claimed balance due, offsetting the balance with the amount of damages. Appellant in his brief states: "We are not contesting the division between the Court and jury even though we thought there was sufficient facts in both to go to the jury, but we do feel that the failure of the court to properly instruct the jury as to the effect of the jury's finding for the respondents, defendants on their cross-complaint, in effect, be a bar to any finding by the Court on its retained part of the case." With this statement we do not agree. The trial court did, in fact, make proper division of the issues between itself and the jury, and used the jury's verdict as a partial offset against the amount found due.

■ In appellant's motion for new trial he claims that the verdict of the jury was not a true verdict but was based on its misunderstanding of the instructions of the court. In support of the claim that the jury misunderstood the instructions, the affidavits of four of the jurors were submitted. In each juror's affidavit it is stated:

"* * * that this affiant * * * understood from the instructions of the court that the jury was unable to pass any judgment on the right of the plaintiff, Dawson, to a lien against the property of the defendants but that this juror in considering the case as

submitted under the instructions did believe that by the finding of a measure of damages for the defendants that this would in effect balance the equities between the parties and be considered as against the amount the court, would allow upon the claim of lien and attorney's fees to the plaintiff, Mr. Dawson. It was not my understanding as a juror in the arrival of our verdict to allow some damages to the defendants that we were barring any and all recovery on the part of the plaintiff, Mr. Dawson, under his claim of lien and attorney's fees. Had I understood this situation to have existed I would not have concured in the verdict as rendered."

These affidavits were presented in an attempt to impeach the verdict of the jury, and were not submitted for the purpose of showing what verdict was rendered, as in the cases of Drainage District No. 2 of Canyon County v. Extension Ditch Co., 32 Idaho 314, 182 P. 847, and Glennon v. Fisher, 51 Idaho 732, 10 P.2d 294. Nor were these affidavits submitted to disclose communications or other improper acts of third parties, as illustrated in the case of Emmert v. State, 127 Ohio St. 235, 187 N.E. 862, 90 A.L.R. 242. Further, the affidavits are not inconsistent with the verdict itself. The rule has long been established in this state that a verdict may not be impeached by the affidavits of jurors,

except for the statutory ground (I.C..§ 10–602) that it was determined by chance. Griffiths v. Montandon, 4 Idaho 377, 39 P. 548; Bernier v. Anderson, 8 Idaho 675, 70 P. 1027; Moyer v. Hyde, 35 Idaho 161, 204 P. 1068, 28 A.L.R. 695; Hall v. Johnson, 70 Idaho 190, 214 P.2d 467; State v. Bedwell, 77 Idaho 57, 286 P.2d 641. The reasons for such a rule and the problems involved in a departure from it were well expressed in Kollert v. Cundiff, 50 Cal.2d 768, 329 P.2d 897:

"A few jurisdictions permit a wider use of a juror's affidavit to impeach a verdict than has been allowed in California (citing cases), and plaintiffs urge us to relax the rule in this state. The problem involves the balancing of two conflicting policies. It is, of course, necessary to prevent instability of verdicts, fraud, and harassment of jurors, and, on the other hand, it is desirable to give the losing party relief from wrongful conduct by the jury. The court in McDonald v. Pless, 238 U.S. 264, 267–269, 35 S.Ct. 783, 785, 59 L.Ed. 1300, after discussing these policies and stating that the wrong to the individual was the lesser of two evils, concluded that as a general rule the affidavits should be excluded but that there might be instances where the rule could not be applied without 'violating the plainest principles of justice.'"

For further discussion of the rule, See also 53 Am.Jur. Trial § 1105, page 770; Emmert v. State, 127 Ohio St. 235, 187 N.E. 862, 90 A.L.R. 242.

▇ The other ground for the motion for new trial, i. e., that the verdict is contrary to the evidence and law is without merit. An examination of the record discloses substantial although conflicting evidence on the issues presented; therefore the trial court was correct in refusing to grant such motion for new trial.

▇ It is contended that the Court erred in making an amendment to the findings of fact and judgment after more than ten days had elapsed after entry of the judgment. Appellant's position here is somewhat incongruous. He initially moved to alter and amend the original judgment entered in favor of respondents and for a new trial. Then, after the court did set aside the judgment previously entered, making findings of fact and conclusions of law and rendering a new judgment, appellant now complains of the court's actions. By appellant's motion to amend the judgment and to grant a new trial, all filed the same date, he afforded the trial court the opportunity to proceed under the provisions of IRCP 59(a), which provides:

"On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment."

The court properly acted within the authority of such rule, this action being one for hearing before the court as well as the jury. The verdict of the jury was not set aside, but was properly used as an offset against the amount the trial court found due and owing by the respondents to the plaintiff. (See also IRCP 52(b).)

▇ The trial court found (Findings of Fact V)

"That the defendants have paid the plaintiff upon the contract referred to in the preceding paragraph the sum of $12,010.51 leaving a balance due on said contract to Plaintiff of the sum of $1,989.49;"

The exhibits touching upon the matter of payments are Plaintiff's Exhibit #3, the statement of account between appellant and respondent, and Exhibit #5, copies of checks issued by Home Federal Savings and Loan Association from the $14,000.00 fund. Exhibit #3, on which appellant bases his claim that $5,100.81 is due, indicates payments to appellant of $7,570.64 (excluding credits for overcharges and returned merchandise), while Exhibit #5 shows total disbursements of $13,959.86 from the $14,000.00 fund with the loan association. The trial court made no spe-

cific findings as to what items were properly chargeable against the contract, or what items were in payment of changes (if any) from the original contract including change of grade of roofing, or what items were in payment of the obligations assumed by the Eldredges (i. e., for the plumbing, painting, or electrical work and the pressure tank). The failure of the court to make findings in such detail as to enable this court to determine just what items were chargeable or not, requires reversal of this cause with directions to the trial court to make findings more specific as to the items to be included or excluded from the account between the parties.

The decree is reversed and the cause is remanded to the trial court with directions to make findings more specific and detailed, and, if he deems it necessary to reopen the case for further evidence, to consider such additional evidence as may be necessary to enter such findings, in accordance with this opinion; to make determination of what items are covered by the appellant's lien; to fix an appropriate sum as attorneys fee; and to give judgment to appellant for the foreclosure thereof.

Costs to appellant.

SMITH, C. J., and TAYLOR, KNUDSON and McQUADE, JJ., concur.