416 P.2d 501

**LAYRITE PRODUCTS COMPANY,**
Plaintiff-Appellant,

v.

**Joe LUX and Alphonsie Lux, husband and wife, Defendants-Respondents.**

No. 9746.

Supreme Court of Idaho.

July 14, 1966.

Robert C. Strom, Craigmont, Lawrence W. Thayer, of Brown & Thayer, Spokane, Wash., for appellant.

Clements & Clements, Lewiston, for respondents.

SPEAR, Justice.

This is a lien foreclosure action wherein a materialman furnished material used by a contractor in the construction of a home. Layrite Products Company, the plaintiff-appellant herein, a Washington corporation engaged in the business of the manufacture and sale of building materials, is the materialman. The contractor is Arsenault Masonry, Inc., also a Washington corporation. Joe Lux and Alphonsie Lux, husband and wife, the defendants-respondents herein, are the homeowners. Layrite sold building materials to Arsenault which were used in respondents' house. The Luxes paid Arsenault in full for the work it completed but never received credit with Layrite for the materials purchased and used for the construction of their home.

The district court found that Layrite dealt with Arsenault on a general open running account without regard to the use of its materials in the construction of any particular building or project and concluded Layrite could not therefore now assert a lien on respondents' property and residence merely because building materials sold to Arsenault were subsequently used in respondents' home. Judgment thereupon was entered for the respondents. From that judgment, Layrite appeals to the supreme court.

This is the second appeal filed in this case. Earlier, the supreme court, in Layrite Products Co. v. Lux, 86 Idaho 477, 388 P.2d 105, reversed the trial court's holding the lien invalid for the reasons that the claim of lien did not name the wife as an owner of the community property and that the legal description of the property was inserted in the claim of lien after verification and remanded the cause for further proceedings from which this present appeal is prosecuted.

Respondents entered into a contract with Arsenault in the spring of 1959 whereby it was agreed that Arsenault would perform masonry and construction work on respondents' residence. The building materials used in the Luxes' home were purchased by Arsenault from appellant, Layrite, between June 26, 1959 and September 24, 1959. The materials purchased had a reasonable market value, the district court found, of $3,019.19. Delivery was made to Arsenault at Layrite's plant at Spokane.

Arsenault had been a regular customer of Layrite for more than ten years prior to the spring of 1959 and had purchased building materials both for its own inventory and stock and for use in its various construction projects. Its account with appellant was substantial and totaled some $60,000.00 to $100,000.00 worth of such materials per year. Materials sold to Arsenault during the period over which the materials used in respondents' home were purchased totaled in excess of $20,000.00. Arsenault was sold building materials on an open running account basis. Its open account with Layrite amounted to approximately $32,000.00 at the end of September, 1959.

Appellant, Layrite, generally admitted that in its dealings with Arsenault materials were sold on an open running account and on general credit without reference to particular projects for which such materials might be used. This, it is stated, is the normal manner of sale by any materialman. However appellant contends that the materials sold and later used in respondents' home were sold with reference to the particular job. Invoices issued upon delivery of the materials were introduced into evidence. Each it is maintained plainly states the house job number or job designation and shows conclusively that Layrite sold the building materials with the specific knowledge that such materials were to be used in respondents' home and upon the security of the building for which the materials were purchased. The district court, however, found that the job number or job designation had been given Layrite by Arsenault and that such identification was entirely for the use and convenience of Arsenault in billing customers; and

that Layrite relied solely on the general credit of Arsenault and did not seek the additional security of the residence for which the materials had in fact been purchased.

Arsenault found itself in serious financial difficulty about the end of August of 1959, which made it necessary to assign all its accounts receivable to the Seattle First National Bank in Spokane. All sums thereafter received by Arsenault from any account were turned over to the bank and deposited by the bank into a "bank control-collateral account," from which account only the bank itself could make withdrawals. The bank continued to advance money to Arsenault in order that Arsenault could meet payroll and other expenses incurred in the operation of its business and received therefor from Arsenault demand notes covering the amounts advanced and secured by the blanket assignment of accounts receivable. The record shows that from time to time as the Arsenault receivables were deposited with the bank, the bank would make withdrawals from its special control account and the sums so withdrawn were applied to the oldest Arsenault notes held by the bank.

Appellant became concerned about the financial condition of Arsenault and its ability to meet payments on its long standing account with appellant, and a meeting with Arsenault and a representative of the bank was arranged in September, 1959. Appellant agreed to further extend credit to Arsenault on a general running open account basis since it appears Arsenault was insistent that no liens be filed against the properties of its customers. Appellant in turn it was agreed would receive $7,-000.00 for the period August 31, 1959 through September 31, 1959 from collections made on accounts receivable, totaling $55,000.00, which amount it was projected would represent the collectable receivables for that period. Appellant subsequently received the $7,000.00 which it applied to its open account—outstanding balance some $32,000.00, with Arsenault. There was no

attempt to credit that payment or any portion thereof to any particular job of Arsenault.

The record makes evident it was necessary that the bank have the assurance from Layrite that it would not file any liens and would continue to furnish Arsenault materials for as long as this arrangement remained in effect. The bank believed that Arsenault would recover from its present financial difficulty if permitted to remain operative and felt it best for all concerned that Arsenault continue business. Given that assurance the bank loaned Arsenault on its demand notes $68,496.00 for operational expenses between August 31, 1959 and October 15, 1959, though payments received from the assigned receivables for this period totaled only $57,-586.80.

Respondents paid Arsenault in full for labor performed and materials furnished. The total amount paid was $17,000.00, which sum was deposited in the bank's control-collateral account and respondents received no credit from appellant for the amount paid Arsenault. The Luxes never, as might have been done, instructed Arsenault to apply the payment made against the account with appellant but merely trusted Arsenault to do so. The payment was instead, as noted, deposited in the special control account. Withdrawals from this account the bank applied against the oldest Arsenault demand notes.

Though in fact the $7,000.00 paid Layrite on the Arsenault open account was a new loan from the bank, there existed obviously a correlation between the collection of funds into the collateral account and the subsequent debt reduction on the outstanding Arsenault account. The $17,000.00 payment made by respondents constituted a portion of the $55,000.00 receivables collected and out of which appellant received the $7,000.00.

After October 8, 1959 Layrite felt it could no longer continue its arrangement with the bank since the receivables were not coming in as projected. Appellant

then took further steps to secure itself as far as its own receivables were concerned and late in October or early November 1959 appellant broke down its general ledger account with Arsenault. In order to determine to which projects items appearing on the general ledger account with Arsenault should be allocated Layrite required the assistance of Arsenault's manager. Layrite filed its lien on November 18, 1959. The district court found that this was the first lien appellant had ever filed against property of customers of Arsenault during all the years that appellant had done business with Arsenault.

Appellant principally alleges that: (1) the court erred in holding that appellant had no lien because it sold on an open running account and on the general credit of the contractor; (2) the court erred in holding that appellant did not sell any material for use in respondents' house; (3) the court erred in holding that appellant had received payment for the materials sold for respondents' house. On appeal the argument is first advanced that materials need not have been furnished by a materialman expressly for the particular building on which the lien is asserted, but that a materialman selling materials on open account and on the general credit of the purchaser does not thereby, without more, lose his right to a lien on the structure in which the building materials are used. In the alternative it is argued that in any event the building materials used in respondents' house were furnished specifically for use in that particular structure and that the invoices which appellant introduced in evidence show this was in fact the case. Finally appellant, in considerable detail, attempts to conclusively prove that payment for the materials used was not received by the appellant. The trial court it must be noted never found specifically that payment had been received but rested its decision upon other grounds as hereinbefore stated.

The right of a materialman to assert a lien against a structure for which materials have been furnished is a right granted and therefore determined by statute. 57 C.J.S. Mechanics' Liens § 1, p. 491; 36 Am.Jur., Mechanics' Liens, §§ 2, 3, pp. 19, 20; Ekstrom United Supply Co. v. Ash Grove Lime & Portland Cement Co., 194 Kan. 634, 400 P.2d 707 (1965); J. W. Copeland Yards v. Taranoff, 238 Or. 167, 392 P.2d 259 (1964). See also Dawson v. Eldredge, 89 Idaho 402, 405 P.2d 754; Boone v. P & B Logging Company, 88 Idaho 111, 397 P.2d 31. The pertinent statutory provision in Idaho is I.C. § 45–501 and in part reads:

> "Right to lien—Every person performing labor upon, or furnishing materials to be used in the construction, alteration or repair of any * * * building * * * has a lien upon the same for the work or labor done or materials furnished, whether done or furnished at the instance of the owner of the building * * * or his agent; and every contractor * * * shall be held to be the agent of the owner for the purpose of this chapter * * *."

The significant words of the statute applicable to our fact situation are: *"or furnishing materials to be used* in the construction, alteration or repair of any * * * building."* (emphasis supplied.)

Statutes such as the Idaho provision which permit a lien *for materials furnished* usually apply only to furnishing for building purposes, and do not include a furnishing for general or unknown purposes, or an ordinary sale in the usual course of trade, or on a general open account, or a sale without any reference as to what shall be done with the material sold. It has been held that though materials must be furnished for building purposes and not for general or unknown purposes, *it is not essential that at the time the materials are sold the parties have in contemplation any particular building or structure. The weight of authority however holds it is essential that the materials shall have been sold or furnished for the specific purpose of being used in the par-

ticular building on which the lien is claimed. Additionally, the materials must have been furnished on the credit of the building, and not merely on the general and personal credit of the owner, contractor or some other person. Where materials are furnished for use in a particular building, the fact that the materialman looks first or primarily to the contractor for payment and only subsequently to the building for security, would not of itself defeat the lien. 57 C.J.S. Mechanics' Liens §§ 45–46, pp. 538–539; 36 Am.Jur., Mechanics' Liens, § 75, p. 62; 39 A.L.R.2d § 1, p. 397, n. 4. See also Andrew v. Dubeau, 154 Me. 254, 146 A.2d 761 (1958); Tabet v. Davenport, 57 N.M. 540, 260 P.2d 722 (1953); Ohio Oil Co. v. Fidelity & Deposit Co., 112 Ind. App. 452, 42 N.E.2d 406 (1942); W. P. Fuller & Co. v. Fleisher, 63 Cal.App. 78, 218 P. 53 (1923); Whittier v. Puget Sound Loan, Trust & Banking Co., 4 Wash. 666, 30 P. 1094 (1892).

The 1896 case of Colorado Iron Works v. Riekenberg, 4 Idaho 705, 43 P. 681, apparently is the single Idaho decision wherein the supreme court discussed specifically the requirement that materials must be furnished to be used in the building against which the materialman asserts his lien. Plaintiff had sold machinery to defendant who later installed it in a mill, and plaintiff brought the action to foreclose a mechanics lien claimed to have been obtained on the mill. The court stated, at page 710, 43 P. at page 683:

> "It does not appear that, at the time the plaintiff and defendant entered into the agreement of purchase and sale of the machinery, there was anything said or intimated as to where or for what purpose the machinery was to be used. It was a general sale. To entitle the vendor to a lien, 'the materials must not only have been used in the construction of the building, but they must have been furnished to be used in that building.' 2 Jones, Liens, § 1327, and cases cited in note 2. *'Materials must be furnished with special reference to their use in a particular building in order to secure the protection of a mechanic's lien law'* 2 Jones, Liens, § 1326; Choteau v. Thompson, 2 Ohio St. 114, 124. These requirements cannot, we think, be supplied by construction." (emphasis supplied)

Admittedly the facts presented for decision in this early Idaho case differ considerably from those presented in the case at bar. Nonetheless the language which the court used is broad enough to unmistakenly suggest that materials must be furnished for the specific purpose of being used in the particular building on which the lien is claimed and that a mere furnishing for building purposes generally is not sufficient.

Appellant claims that the later Idaho decision in Idaho Lumber & Hardware Co. v. DiGiacomo, 61 Idaho 383, 102 P.2d 637, overruled *sub silentio* the earlier Colorado Iron Works decision. This is not the fact. The DiGiacomo case merely held that it was not necessary to show that the materials sold were used in and upon the premises. Whether materials sold must be furnished for use in a particular building and whether materials sold must have been in fact actually used in that building are entirely separate and distinct issues. See Anno. 39 A.L.R.2d 394. The court in Ohio Oil Co. v. Fidelity & Deposit Co., supra, 42 N.E.2d at p. 409, noted that while under the mechanics lien law of various jurisdictions there is a conflict in authority on the question of whether a materialman is entitled to a lien for materials not actually incorporated into the structure or improvement, there is general agreement that if a materialman sells his materials without any understanding as to their application the materialman can assert no lien upon the building upon which the materials may, in fact, be used. The significance which appellant would accord the DiGiacomo decision is not therefore warranted and that case does not modify or overrule the Colorado Iron Works case nor lessen the authority of other cases cited herein on the issue of whether materials

must be furnished with special reference to the building in which used.

■ The trial court found that Arsenault's purchases of materials from appellant were made on the general credit of Arsenault on a running account basis and that appellant was neither concerned nor interested in the use, purpose or location of the structure for which Arsenault obtained the materials. Implicit in the findings of the trial court is the conclusion that appellant relied exclusively on the credit of its purchaser. The court additionally specifically found that the job notations on the invoices which appellant had introduced into evidence to show that the materials sold were furnished for use in the construction of the Lux residence, were for the convenience of Arsenault only and would not support the conclusion urged by appellant. This was clearly a question of fact for the trier of facts. J. W. White Co. v. Griffith, 127 Me. 516, 145 A. 134 (1929). Such findings of fact as were made by the trial court, the record discloses, are supported by substantial, though conflicting, evidence, and will not be disturbed on appeal. Durfee v. Parker, 90 Idaho 118, 410 P.2d 962; Dawson v. Eldredge, 84 Idaho 331, 372 P.2d 414; Idaho Lumber & Hardware Co. v. DiGiacomo, supra. This court must accept as a fact the finding that the materials furnished Arsenault, and thereafter used in the Lux residence, were furnished without special reference to the particular structure for which purchased. Thus the trial court was correct in concluding that appellant relied exclusively on the credit of Arsenault and did not seek the additional security of the building for the materials furnished on credit. See for example, Ohio Oil Co. v. Fidelity & Deposit Co., supra.

■ Moreover, appellant generally admits that in its dealings with Arsenault materials were sold on an open running account and on general credit without reference to particular projects for which such materials might be used but claims that this is the normal manner of sale by any materialman; that is, Layrite admits that, while it sold materials on general credit it was not intended thereby to waive its right to thereafter assert a lien on property for which the materials had been purchased should that become necessary. The cases which appellant has cited for the most part stand merely for the proposition that a materialman does not forfeit the right to a lien where he has primarily relied upon the credit of the contractor or some other person in furnishing material for the construction, alteration or repair of a particular structure or improvement. Midland Bldg. Industries v. Oldenkamp, 122 Ind. App. 347, 103 N.E.2d 451 (1952); Kendall Lumber & Coal Co. v. Roman, 120 Ind.App. 368, 91 N.E.2d 187 (1950); Caird Engineering Works v. Seven-Up Gold Mining Co., 111 Mont. 471, 111 P.2d 267 (1941); Peerless Pacific Co. v. Rogers, 81 Or. 51, 158 P. 271 (1916); Smith v. Hopper, 67 Wash. 224, 121 P. 77 (1912). With that proposition we cannot disagree. The real question in issue however is whether in fact Layrite did or did not exclusively rely upon the credit of Arsenault. The evidence suggests strongly that appellant did. Though the trial court never specifically found that Layrite relied *exclusively* on the credit of Arsenault, that is the fair inference which may be drawn from the evidence and the findings of fact and conclusions of law reached by the court. The evidence fully supports such a finding and in arriving at the conclusions he did the trial judge must have so found. Under these circumstances appellant clearly is not entitled to the lien it asserts. Cf. Botzum Bros. Co. v. Brown Lumber Co., 104 Ohio App. 507, 150 N.E.2d 485 (1957); Schuman v. Teague, 195 Okl. 328, 156 P.2d 1010 (1945); Ohio Oil Co. v. Fidelity & Deposit Co., supra.

■ Where final judgment or order of the lower tribunal is correct, but entered upon a different or erroneous theory, the judgment or order will be affirmed by the appellate court upon the correct theory. Gagnon v. St. Maries Light, etc., Co., Ltd.;

26 Idaho 87, 141 P. 88; Evans v. Continental Life and Accident Company, 88 Idaho 254, 398 P.2d 646; Jackson v. Blue Flame Gas Co., 90 Idaho 393, 412 P.2d 418; Fike v. Bauer, 90 Idaho 442, 412 P.2d 819.

■ We conclude the appellant did not have an enforceable materialman's lien on the building or other property of the respondents. The allowance of attorneys' fees is incidental to the foreclosure of a materialman's lien, and where the lien fails no fee can be allowed. Boone v. P & B Logging Co., 88 Idaho 111, 397 P.2d 31; Dawson v. Eldredge, 84 Idaho 331, 372 P.2d 414; Willes v. Palmer, 78 Idaho 104, 298 P.2d 972.

The foregoing makes full determination of this cause and it is unnecessary to discuss appellant's remaining assignments of error. Judgment affirmed. Costs to respondents.

McFADDEN, C. J., and McQUADE, TAYLOR and SMITH, JJ., concur.